## Springfield Water Company *v.* Philadelphia & Garrettford Street Railway Company, Appellant.

*Road law—Streets and highways—Change of grade—Street railways— Water companies—Franchises—Cost of lowering pipes—Ordinances— Act of April 29, 1874, P. L. 73.*

1. A water company created under the Act of April 29, 1874, P. L. 73, and its supplements exercises its franchise and maintains its property in the streets of any borough subject to the paramount right of such municipality to change the grade of the street in which its lines are located, and the fact that a municipality may be induced to some extent to adopt such a change of grade at the instance of a street railway company does not relieve a water company forced thereby to lower its pipes, from its charter obligations.

2. Where a borough in consideration of its assent to the entry upon its streets of a street railway company and its authorization of a change in grade of one of such streets obtains from the railway company an agreement that it will "bear the entire cost and expense of all changes in the grades, of the macadamizing and repairing of the streets or avenues, and shall indemnify the said borough from all damages recovered by property owners for said change of grade," the agreement imposes upon the railway company only such obligations as are in relief of the borough and its taxpayers and does not give rise to any obligation on the part of the railway company upon which a water company maintaining its pipes in such street can ingraft a right to recover the cost of lowering such pipes occasioned by the change of grade.

Argued Nov. 22, 1910. Appeal, No. 11, Oct. T., 1910,

by defendant, from judgment C. P. Delaware Co., March
Term, 1908, No. 170, for plaintiff on case tried without
a jury in case of Springfield Water Company v. Philadel-
phia & Garrettford Street Railway Company. Before
Rice, P. J., Henderson, Morrison, Orlady, Head,
Beaver and Porter, JJ. Reversed.

Trespass to recover the cost of lowering a water main.
Before Broomall, J., without a jury, under the act of
April 22, 1874.

The facts appear in the opinion of the Superior Court.

*Error assigned* among others was in not entering judg-
ment for the defendant.

*William I. Schaffer,* with him, *John J. Stetser* for ap-
pellant.—As between the water company and the borough,
the water company could not recover damages from the
municipality resulting from its being compelled to move
its pipes by reason of the change of grade: Scranton Gas
& Water Co. v. Scranton, 214 Pa. 586.

As no damages could be recovered against the munici-
pality, obviously no damages could be recovered against
a contractor changing the grade in its behalf, where such
contractor proceeded with the work in accordance with
the ordinance authorizing the change and without negli-
gence, and in this regard the fact that the authorized agent
of the borough in making the change of grade was a
street railway company can make no difference unless it
was subject to liability to the water company by virtue of
the terms of the ordinance authorizing it to alter the
grade. A reading of the ordinances will show that no
such liability was imposed by the borough upon the street
railway company; that the only purpose of the ordinances
was to relieve the borough from liability for those things
which it would have been liable for as a result of the
change of grade and that there was no intention upon the
part of municipalities to do anything but to relieve them-

selves from costs and damages. A third party to a contract cannot recover thereon when the contract is not made for such third party's benefit: Morgan Engineering Co. v. McKee, 155 Pa. 51.

*E. H. Hall,* for appellee.—This being a claim for resulting injuries, the action was properly brought in trespass: Penna. R. R. Co. v. Duncan, 111 Pa. 352; Chester County v. Brower, 117 Pa. 647; Riddle v. Delaware County, 119 Pa. 159; Atlantic & Birmingham Ry. Co. v. McKnight, 125 Ga. 328 (54 S. E. Repr. 148).

The defendant company's charter, with its right of entry upon the streets by municipal consent, is subject to the implied reservation that it shall not be so used as to injure others: Com. v. Penna. Canal Co., 66 Pa. 41; Penna. Canal Co. v. R. R. Co., 203 Pa. 282.

Opinion by Head, J., March 3, 1911:

The plaintiff water company is a corporation duly created under the general act of April 29, 1874, P. L. 73, and its supplements. By virtue of the authority conferred upon it by the creative act and the necessary subsequent municipal assent, it had entered upon a certain street known as Springfield avenue, which was common to the two adjoining boroughs of Clifton Heights and Alden, and constructed therein a portion of its pipe line system which was buried beneath the surface of the ground. As the relations of the parties hereto with both of the boroughs named are identical, we shall for convenience treat the question as if but a single borough were concerned.

The thirty-fourth section of the act referred to authorizing corporations created under it to enter upon the streets of boroughs and cities, after obtaining municipal consent, declares that such entry and the maintenance of their pipe lines therein shall remain "subject to such regulations as the councils of said borough, town, city or district may adopt in regard to grades or for the protection and convenience of public travel over the same." There

was therefore written in the very charter which gave to the plaintiff its existence its obligation to thereafter exercise its franchise and maintain its property in the streets of any borough, subject to the paramount right of such municipality to change the grade of the street in which its lines were located. It must be conceded therefore, as it is, that when a lawful change of the grade of a street, in which said property had been located, had been duly ordained, the water company was bound by the fundamental law of its being to recognize the right of the municipality to make such change and to adjust its property accordingly. The provision of the statute quoted was but declaratory of the general law, and the right of the municipality and the obligation of the corporation using its streets would have been the same without such provision: Scranton Gas & Water Co. v. Scranton, 214 Pa. 586.

The effect of the provision quoted in the statute was not by any means to vest in the water company any right to determine when such change of grade should be made or to challenge the propriety of the action of the municipal authorities in making it. It is clear then that if the municipality, under ordinary conditions, had ordained a change in the grade of Springfield avenue, and if, as an incident to such change, the plaintiff water company had been compelled to lower its pipes, it could not maintain any proceeding against the borough to recover the cost thereof. To do that very thing at its own expense was one of the conditions on which it began its corporate life.

Now the grade of Springfield avenue was changed. This was done, as the court below finds, in pursuance of an ordinance duly enacted by the borough. The agency that was selected by the borough to do the physical work necessary to effectuate that change was the defendant railway company. No question is raised but that the work was done according to the plans and specifications furnished by the borough engineers, as the ordinance provided it should be, and the new grades shown on these plans and specifications were formally and in terms ap-

proved and adopted by the municipality. This change in grade so far lowered the surface of the street along a portion of Springfield avenue that as a consequence the plaintiff company was obliged to bury its water pipes somewhat deeper in order to protect them from the action of frost. To recover the costs and expenses of that work this action of trespass was brought against the defendant railway company.

Whilst it is conceded, as we have said, that if the work had been done directly by the borough, no such claim could be successfully urged against it, yet it is argued that because the borough was induced to some extent to adopt the ordinance at that time, at the instance of the defendant railway company, and because the latter would derive some benefit from the change of grade, the water company is relieved from its charter obligation already referred to; that the defendant has become in some way a tort feasor, and that it must answer in damages for the expenses occasioned to the plaintiff by the change of grade.

The plaintiff seems to have assumed the right to determine that this municipal action was not intended to subserve the public convenience or welfare, but merely to promote the interest of another corporation, and that, as a consequence, the injury to its property was not of the character which it had covenanted with the state it would itself repair. On what ground the plaintiff corporation thus assumes the right to review the municipal action and attribute to it improper purposes or objects, we are at a loss to perceive. Let it be granted, for the sake of the argument, that one of the chief purposes of the municipal authorities, in determining upon the change of grade at that time, was the fact that it would thereby secure the construction and operation in the community of a new means of transportation. If so, does that warrant the plaintiff's conclusion that there was no element of public convenience and welfare entering into the question? It is a matter of common observation that effective means of transportation have become practically a necessity of

modern urban life, only less important perhaps than the furnishing of an adequate supply of pure water. We do not think therefore it was competent for the plaintiff to urge, nor that it can urge with success, that the adoption of the ordinance authorizing the change of grade was only intended for the defendant's purposes and not to subserve the public convenience, welfare and comfort.

The act of the borough authorizing this change of grade was a lawful exercise of its municipal power. In the exercise of that power it had a right to secure for itself, as far as it could, indemnity against the costs and expenses of the improvement or of any damages it would incur thereby. This it appears to have done. The defendant company was seeking from the borough not only a franchise to operate its cars, inter alia, along Springfield avenue, but was desirous of having the grade of that street changed so that it could give to the citizens of that community the service they had a right to expect from it.

The borough then gave its assent to the entry upon its streets of the defendant company and determined to change the grade of Springfield avenue. In consideration of the exercise by the borough of these two undoubted municipal rights, it obtained from the defendant company an agreement that it would "bear the entire cost and expense of all changes in the grades, of the macadamizing and repaving of the streets or avenues as herein (in the ordinance) provided, and shall indemnify the said borough for all damages recovered by property owners for said change of grade." How did the fact that the borough exacted and received from the street car company an undertaking to relieve it of the burdens that would have otherwise fallen on it as a result of this change of grade convert the municipal act and what was done pursuant to it into a tort against the plaintiff company? How did it give to the latter the right to question the object and purposes of the municipal act and strip it of those characteristics which are presumably incident to it? How did it change the relation of the water company to the munic-

ipality and relieve the former of its charter obligation to adjust its pipe line to the future grades of the street whenever the borough should determine that the grade should be changed.

It seems to us clear enough that we must regard the change of the grade of the street in this case as but the ordinary and lawful exercise of a municipal power. The borough by ordinance authorized and directed it. The borough, by its officers, determined the nature and extent of the change that should be made. The borough approved, ratified and adopted the plans prepared by its officers for such change of grade, and the borough is not claiming that any one usurped its rights, its functions, or its powers, nor is it disclaiming any responsibility which the law would impose upon it following a change in the grade of one of its streets. The act of changing the grade was then, in every essential feature, a municipal act, and the defendant company was but the hand through which the necessary physical work was performed. We must therefore conclude that the defendant is in no respect a tort feasor and that it has committed no act of trespass against the plaintiff.

The defendant then having done nothing except the physical work on the ground, authorized and contemplated by the ordinance which had been duly enacted, incurred no liability to any one except the liability to faithfully discharge the covenants undertaken in its contract with the borough. The nature and extent of this obligation is to be ascertained from an examination of the ordinance because, when formally accepted by the defendant, it became the measure and the evidence of its contractual undertaking. It is, of course, conceded that the plaintiff company was no party to that contract. Unless it appears therefore that somewhere in that contract the defendant bound itself to pay to the plaintiff, or for its use and benefit, the money which the latter now seeks to recover, no cause of action exists in its favor.

We have already quoted the language of the ordinance

in this respect. In the first clause of the section quoted the defendant undertook to "bear the entire cost and expense of all changes in the grade." Can this language in a contract between the borough and the defendant company be fairly construed to cover the expenditure of money by the plaintiff company for which the borough would be in nowise liable, and which, as to it, would certainly not be any part of the costs and expenses of a change in the grade of one of its streets? Suppose the borough had contracted with the defendant to do the same work for compensation and had provided that the measure of that compensation should be "the entire cost and expense of all changes in the grade" plus ten per cent. Could the water company, in such case, have any standing to assert that the cost of adjusting its lines to the new grade was a part of the entire cost and expense of changing the grade within the meaning of the contract? We think not. What difference then could it make in the construction of the same language that the defendant instead of the borough was to pay the same thing, to wit, the costs and expenses of the grading? The costs and expenses which would naturally be in the contemplation of the borough officials in making such contract would be those, and those only, which the borough would have to bear, unless by its contract it could transfer those burdens to another. And it ought not to need argument to reach the conclusion that the defendant company was not contemplating the assumption of any burdens which were not in relief of the borough.

Besides, when we view the entire section of the ordinance quoted, it seems to us plain that it was the intention of the parties to that contract to impose upon the defendant only such obligations as would be in relief of the borough and the taxpayers thereof. It was there specified that the defendant should pay certain enumerated sums, to wit, (a) the cost and expense of all changes in the grades, (b) all macadamizing and repaving the streets named in the ordinance, and (c) the costs of advertising and engrossing

the ordinance, and then,—as if to show the light in which the foregoing should be read—the section concludes with the requirement that the company shall indemnify the borough for all damages recovered by property owners on account of the change of grade.

When we view this provision as a whole we cannot escape the conclusion that a fair construction of the undertaking of the defendant obliged it to pay only such costs and expenses as the borough itself would have been required to pay had it done the work directly. We can find therefore no act of trespass committed by the defendant which could be the foundation of an action against it sounding in tort. But waiving any question as to the form of the action, as we have been urged by the appellant to do, we are equally satisfied that there does not exist in the contract between the defendant and the borough any obligation on the part of the defendant upon which the plaintiff can successfully engraft a right to recover the money here sued for. The learned court below should therefore have entered judgment in favor of the defendant.

Judgment reversed.