Philadelphia Suburban Water Co., Appellant, *v.*
Pennsylvania Public Utility Commission.

Argued October 6, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Frederick H. Knight,* with him *Martin P. Snyder, W. James MacIntosh* and *Morgan, Lewis & Bockius,* for appellant.

*Lloyd S. Benjamin,* with him *Albert E. Luttrell, William J. Grove* and *Charles E. Thomas,* for Pennsylvania Public Utility Commission, appellee.

*Joseph J. Laws,* with him *John R. Rezzola, Jr., Thomas C. Evans, Phil H. Lewis,* Deputy Attorney General and *Charles J. Margiotti,* Attorney General, for Department of Highways, intervening appellee.

OPINION BY RENO, J., January 12, 1951:

On the application of the Department of Highways for the approval of the abolition, construction and alteration of certain railroad crossings, and the allocation of the costs thereof,[1] the Pennsylvania Public Utility Commission ordered Philadelphia Suburban Water

---

[1] Under Public Utility Law of May 28, 1937, P. L. 1053, §409, as amended, 66 P.S. §1179.

Company, appellant, to remove its pipes from a portion of the state highway known as Legislative Route 144 at its own expense. From that order and a further order refusing a rehearing the Company appealed. The Department became an intervening appellee.

This decision does not require a comprehensive statement of the many details of the vast project involved in the proceeding. It is sufficient to state that the abolition and alteration of the railroad crossings are necessitated by the construction by the Department of a four-lane divided limited access highway, known as the Schuylkill Expressway (Legislative Route 769) which will run from the eastern terminus of the Eastern Extension of the Pennsylvania Turnpike[2] at King of Prussia, Montgomery County, to Philadelphia. The estimated cost of the project is $1,234,170, which will be wholly borne by the Department.

The plans of the Department, approved by the Commission, provide for the vacation of Legislative Route 144 between the barricades shown thereon, a distance of approximately 200 feet. In that section of the highway appellant maintains a 24 inch high pressure line of pipe, which was laid in 1927, *after* the road had become a state highway under the Sproul State Highway Act.[3] The Commission found that the abolition of the existing highway crossing below grade where the tracks of the Pennsylvania and Reading railroads cross Route 144, as well as other features of the project, "are necessary or proper for the service, accommodation, convenience or safety of the public," and entered an ap-

[2] Pennsylvania Turnpike Philadelphia Extension Act of May 16, 1940, P. L. (1941) 949, 36 P.S. §653.

[3] This fact does not appear in the record but appellant's counsel at the argument frankly stated that the pipes were laid in 1927 and that Route 144 was then a state highway.

propriate order, one section of which required appellant at its own expense to remove its pipe line from the vacated portion of Route 144.[4]

Appellant does not question the power of the Commission to enter the order. It does not contend that the order is not supported by competent evidence or controvert its conclusion that the abolition of the crossing and the removal of its pipe line are necessary or proper for the safety of the public. Its own witness testified that the relocation of appellant's facilities "is required to accommodate this proposed new highway improvement." Its sole contention is that the order will require it to acquire title to land outside of the boundaries of the highway in which to relay its pipe, and that the Commission was bound to require the Department to reimburse appellant for the estimated expense of $27,374.27.[5] This contention is predicated upon the proposition that appellant, by virtue of the Act under which it was incorporated, has a franchise right to occupy all highways and that the right is property which is taken by the Commission without compensation in violation of the State and Federal Constitutions.

---

[4] The portion of the Commission's order of which appellant complains is "22. That any relocation of, changes in, or removal of any adjacent structures, equipment or other facilities of any public utility other than Reading Company and The Pennsylvania Railroad Company, located within the limits of any highway which may be required as incidental to the execution of the improvement, herein ordered, be made by said public utility, at its sole cost and expense, and in such a manner as will not interfere with the construction of the improvement."

[5] According to the record, Susquehanna Pipe Line Company and Philadelphia Electric Company will also be required to remove their facilities at their own expense. The former will be required to expend $14,401.94 and the latter between $23,000 and $73,000. We are not aware that these utilities have appealed.

I. Appellant was incorporated under the Act of April 29, 1874, P. L. 73, as amended by the Act of May 16, 1889, P. L. 226, 15 P.S. §1403. The pertinent provisions of §2 of the amending Act empower water companies to raise and introduce a sufficient supply of pure water "into the town, borough, city or district where they may be located," and to enter upon "such lands and enclosures, streets, lanes, alleys, roads and highways and bridges, . . . and to occupy, ditch and lay pipes through the same, . . . subject to such regulations as the councils of said borough, town, city or district may adopt in regard to grades, or for the protection and convenience of public travel over the same."

It is a dubious proposition but we shall concede arguendo that the statutes relating to water companies authorize appellant to lay its pipes in state highways.[6] But the privilege to occupy highways, by the very terms of those statutes, is qualified, not absolute. It can be exercised only in conformity to regulations of local authorities, and in the case of state highways, after the enactment of the Sproul State Highway Act of May 31, 1911, P. L. 468, only under "such conditions, restrictions and regulations as may be prescribed by the" Department. Id. §17. This section was amended from time to time but was substantially re-enacted by the State Highway Law of June 1, 1945, P. L. 1242, §411, 36 P.S. §670-411.

As stated, appellant laid its pipes in Route 144 after it became a state highway. There is no evidence,

---

[6] But see *Bell Telephone Co. v. Lewis*, 317 Pa. 387, 392, 177 A. 36, which holds: "The Act of [April 29,] 1874, did not reach out for appellee's [Bell] benefit to attach to every vestige of property subsequently acquired by the Commonwealth." In that case Bell claimed the right to cross a state highway bridge, held to be part of the highway, under the powers conferred by the Act of 1874. Appellant was incorporated under the same Act.

and appellant offered none, that it secured a Department permit. Since the Department could impose conditions and restrictions, and there is no evidence whether or not any were exacted, we cannot indulge the presumption that appellant complied with the law. Without a permit appellant's occupancy of the highway was unlawful and it secured no rights therein: *Owl Protective Co. v. P. S. C.*, 123 Pa. Superior Ct. 382, 187 A. 229. Possession and use will not sustain a claim to a right to occupy a highway.*Penny Pot Landing*, 16 Pa. 79. However, the case does not necessarily turn upon that point, and we pass it. Even had appellant secured a permit, it would not have constituted a contract with the Commonwealth. *Breinig v. Allegheny Co.*, 332 Pa. 474, 2 A. 2d 842. Such a permit is subordinate and defeasible. *Susquehanna Canal Co. v. Wright*, 9 W. & S. 9. Nor could the Commonwealth, before or after the enactment of the Sproul Act, have agreed in any manner not to vacate the highway or a portion of it. It cannot divest itself of its police power, *Pittsburg & Connellsville R. R. Co. v. The South-west Penna. Ry. Co.*, 77 Pa. 173, and franchises are granted and accepted subject to that overriding power. *Penna. R. R. Co. v. Braddock Electric Ry. Co.*, 152 Pa. 116, 25 A. 780.

. II. In grade crossing eliminations the Commission exercises the police power of the Commonwealth. *Erie R. R. Co. v. P. S. C.*, 271 Pa. 409, 114 A. 357. Damages or compensation are not recoverable for the exercise of that power, *Jackman v. Rosenbaum Co.*, 263 Pa. 158, 106 A. 238, even where the diminution of use amounts to an actual taking or destruction of property. *White's Appeal*, 287 Pa. 259, 134 A. 409. "The police power is the greatest and most powerful attribute of government; . . . If the exercise of the police power should be in irreconcilable opposition to a constitutional provision or right, the police power would

prevail": *Com. v. Widovich*, 295 Pa. 311, 145 A. 295.

In the exercise of that power, the Commission is authorized to "abandon or vacate such highways or portions of highways as, in the opinion of the commission, may be rendered unnecessary for public use by the construction, relocation, or abandonment of any such [grade] crossings." Law, supra, 409(c), 66 P.S. §1179. It cannot be doubted that, as an incident to such vacation, the Commission possesses power to compel a public utility to remove its facilities from the vacated street. "In the exercise of the police power of the State, for a purpose highly necessary in the promotion of the public health, it has become necessary to change the location of the pipes of the gas company so as to accommodate them to the new public work. In complying with this requirement at its own expense none of the property of the gas company has been taken, and the injury sustained is damnum absque injuria:" *New Orleans Gas Light Co. v. Drainage Commission*, 197 U. S. 453, 462, 25 S. Ct. 471, 474, quoted and relied upon in *Titusville Amusement Co. v. Titusville Iron Works Co.*, 286 Pa. 561, 573, 134 A. 481.[7]

Whether regarded as an exercise of the police power or of the power of eminent domain, the vacation of a highway is not a *taking* of private property for public use, requiring payment of compensation conformably to the Constitution, Art. I, §10. *Paul v. Carver*, 24 Pa. 207. Unless a statute expressly imposes liability for compensation upon the Commonwealth for the vacation of a highway, neither damages nor compensation are recoverable. *Heil v. Allegheny Co.*, 330 Pa. 449, 199 A. 341. This follows, because: "While, under Ar-

---

[7] See also *Am. Telegraph & Telephone Co. v. Millcreek Twp.*, 195 Pa. 643, 46 A. 140; *Scranton Gas & Water Co. v. Scranton*, 214 Pa. 586, 64 A. 84; *Duquesne Light Co. v. Pittsburgh*, 251 Pa. 557, 97 A. 85; *Easton v. Miller*, 265 Pa. 25, 108 A. 262.

ticle I, section 10, of the Constitution, the Common-wealth may not *take* private property without making just compensation, it does not come within the mandate of Article XVI, section 8, which provides that municipal and other corporations and individuals, in their exercise of the power of eminent domain, must make just compensation for property taken, *injured or destroyed*,—a provision which fastens upon them liability for consequential damages:" *Heil* case, p. 452. No provision in the Public Utility Law or in any other statute imposes liability upon the Commonwealth, and in their absence appellant's injury, if any, is damnum absque injuria.

III. Moreover, the same section, §409(c), supra, further provides: "The commission may order the work of construction, relocation, alteration, protection, or abolition of any crossing aforesaid to be performed in *whole* or in *part* by any *public utility* or municipal corporation *concerned*[8] or by the Commonwealth." Section 411(a), 66 P.S. §1181, provides in part: "Such compensation [for "adjacent property taken, injured or destroyed"], as well as the expense of such construction, relocation, alteration, protection, or abolition of any crossing, shall be borne and paid, . . . by the *public utilities* or municipal corporations *concerned,* or by the Commonwealth, *in such proper proportions* as the commission may, . . . determine, unless such proportions are mutually agreed upon and paid by the interested parties." (Emphasis added.)

The instant order, note 4, supra, was entered pursuant to this authorization. It fits appellant's status like a glove. Appellant is a public utility; and it is *concerned* in the grade crossing; the presence of its pipes in the highway brings it within the purview of

---

[8] "Concerned" is the equivalent of "interested". *Somerset Co. v. P. U. C.*, 132 Pa. Superior Ct. 585, 594, 1 A. 2d 806.

the Law. *L. V. R. R. Co. v. P. S. C.*, 105 Pa. Superior Ct. 423, 161 A. 422. It has been ordered to remove its pipes at its own expense; that is, in apportioning the cost of the construction of the grade crossings, the Commission has determined that the public utilities concerned, including appellant but excluding the railroads, shall severally bear the expense incurred in the removal of their facilities.

These sections authorize the Commission to compel public utilities, municipalities concerned, or the Commonwealth, "jointly or in several allotments" to pay the expense for eliminating grade crossings. *Westmoreland C. & C. Co. v. P. S. C.*, 294 Pa. 451, 144 A. 407; and see *Pennsylvania Co., etc., v. Philadelphia*, 351 Pa. 214, 40 A. 2d 461. The law does not require that the total expense be prorated among the respective parties upon a percentage basis; the only requirement is that the order be just and reasonable. *Erie R. R. Co. v. P. S. C.*, 271 Pa. 409, 114 A. 357. The inclusion of the Commonwealth as a party upon whom costs of construction may be imposed does not of itself make it liable for compensation. "The State may ex gratia pay a part of the damage if it wishes to, but is not under legal compulsion; . . .:" *Westmoreland* case, supra, p. 462. The Commonwealth is compelled to pay only by virtue of a Commission order assessing the whole or part of the expense upon it. See *Dept. of Highways v. P. U. C.*, 141 Pa. Superior Ct. 376, 14 A. 2d 611.

On its face the Commission's order is just and reasonable, and there is no evidence which impeaches it. All the utilities, except the railroads, are treated equally; all are required to remove their facilities at their own expense. And if we rightly read the testimony and the plans attached to the record, the private rights of way of the railroads are taken without compensation for the highway and crossing improvement.

IV. Nor is the Commonwealth required to pay appellant's expense or damages under that part of §411(a), supra, which provides: "The compensation for damages which the *owners of adjacent property* taken, injured, or destroyed may sustain in the construction . . . of any crossing . . . shall . . . be ascertained and determined by the commission." (Emphasis added.) Then follows the provision quoted supra relating to the apportionment of the cost of construction. Manifestly, appellant is not the *owner of adjacent property;* it is not even an *abutter* on the highway. It owns the pipes in the ground but they are not taken, injured or destroyed; only their removal has been ordered. Nor had it any property or right of property in the highway; it had at most, if it had a permit, the defeasible privilege of occupying the highway, a privilege subordinate to the police power. A permit to use and occupy streets confers a privilege only; it does not create a property right. *Frankford & Phila. Pass. Ry. Co. v. Phila.,* 58 Pa. 119. This section of the Law did not create or enlarge the rights of adjacent owners, entitling them to damages to which they were not previously entitled. *Rzasa v. P. S. C.,* 102 Pa. Superior Ct. 317, 156 A. 714.

Appellant is not, we repeat, an owner of abutting property but it asserts a property right flowing from its relations with the abutters. Route 144 is a rural highway, and appellant argues that by laying its pipes in the highway it acquired an easement in the highway against the abutters who owned the property in fee, an easement which is property and of which it cannot be constitutionally deprived without compensation. The cases[9] upon which appellant relies go no

[9] *Sterling's Appeal,* 111 Pa. 35, 2 A. 105; *Penna. R. R. Co. v. Montgomery Co. Pass. Ry.,* 167 Pa. 62, 31 A. 468; *Duquesne Light Co. v. Duff,* 251 Pa. 607, 97 A. 82.

further than to hold that laying of pipes imposes an additional servitude upon a rural highway for which compensation must be made to, and consent secured from, the abutting owners. There is no evidence that appellant paid the abutters for the additional servitude imposed upon the highway, or that their consent was secured, and there is no presumption that it did. Even assuming that it acquired an easement as against the abutting owners, its easement is not available against the Commonwealth in this proceeding. In *Wayne Sewerage Co. v. Fronefield*, 76 Pa. Superior Ct. 491, 497, this Court distinctly held that an easement in a highway may be destroyed under the police power without compensation. Denying a claim to an easement to discharge sewage through pipes in a highway, Judge, subsequently President Judge, KELLER said: "The streets belong to the Commonwealth and any private grant or right founded in whole or in part on the use of the public streets of a locality is necessarily taken subject to the regulatory and supervisory powers of the Commonwealth and its general police power and must be considered to be so limited at the time it is accepted."

*Panhandle Eastern Pipe Line Co. v. State Highway Commission*, 294 U. S. 613, 55 S. Ct. 563, and *United States v. Welch*, 217 U. S. 333, 30 S. Ct. 527, cited by appellant, teach nothing to the contrary. In *Panhandle* the company had laid its pipes on *private* lands expressly granted to it by the owners and Kansas subsequently laid down a *new* highway and thereby injured the pipes; in *Welch* a *private* right of way was rendered inaccessible by subsequent flooding of part of a farm by the erection of a government dam; and both were eminent domain cases.

V. The State Highway Law of June 1, 1945, P. L. 1242, §412, 36 P.S. §670-412, provides: "Whenever in

the construction . . . of any State highway, . . . it becomes necessary, . . . to occupy the whole or any part of the right of way of any public service company, . . . the department or the county, whichever is responsible for property damages . . . shall, at the expense of the Commonwealth or county, provide a substitute right of way on another and favorable location."

Obviously the section refers to a right of way owned in fee simple or by a base fee, (see *Pa. Schuylkill Val. R. R. v. Reading Paper Mills,* 149 Pa. 18, 24 A. 205) or, possibly, held under lease. It covers only *property* owned or held by a public utility. It does not comprehend a mere *privilege,* a permission, to occupy a highway. In no sense is such a privilege a right of way within the meaning of the statute.

VI. The cases upon which appellant principally relies, *Postal Telegraph-Cable Co. v. P. U. C.,* 154 Pa. Superior Ct. 340, 35 A. 2d 535; *Scranton Gas & Water Co. v. Scranton,* 214 Pa. 586, 64 A. 84; *Delaware River Joint Commission Case,* 342 Pa. 119, 19 A. 2d 278, are not controlling. None was a grade crossing case, and in none was the *Commonwealth* charged with damages or compensation. In *Postal* the Commission acted pursuant to §401, 66 P.S. §1171, of the Law, supra, to determine whether the location of the utility lines constituted a hazard, a grade crossing was not involved. In *Scranton* the municipality required the utility to move its pipes from a street whose grade had been changed, and the Supreme Court held the municipality immune from damages. In *Delaware* the telephone company was obliged to change its lines within the lateral limits of the highway by the Joint Commission, and the Supreme Court held that the Joint Commission, an agent of the Commonwealth, was not liable for damages. The cases contain expressions which restrict the legal conclusions to their factual situations, but

they do not apply to or in any wise delimit the broad powers conferred upon the Commission in railroad crossing proceedings.

VII. Appellant applied for a rehearing in order to prove its estimate of the cost of relocating its pipes, and the Commission denied the petition. We have given effect to its estimate in this opinion, and consequently appellant has suffered no harm.

Order affirmed.