Delaware River Port Authority, Appellant, *v.* Pennsylvania Public Utility Commission.

640

Argued June 3, 1958. Before JONES, C. J., BELL, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

re-argument refused November 5, 1958.

*Morris Duane,* with him *Henry T. Reath, John B. Felton,* and *Duane, Morris & Heckscher,* for appellant.

*Miles Warner,* Assistant Counsel, with him *Jack F. Aschinger,* Assistant Counsel, and *Thomas M. Kerrigan,* Counsel, Pennsylvania Public Utility Commission, appellee.

*Ernest R. von Starck,* with him *Samuel Graff Miller, Vincent P. McDevitt,* and *Morgan, Lewis & Bockius,* for Philadelphia Electric Company, intervening appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, September 29, 1958:

These six appeals challenge an order of the Superior Court[1] which affirmed an order of the Pennsylvania Public Utility Commission placing upon the Delaware River Port Authority (herein called the Authority) the entire cost of relocating certain facilities of the Philadelphia Electric Company (herein called the Electric Company).

The problems which these appeals present arise from the construction by the Authority of the Walt Whitman bridge which spans the Delaware River between Philadelphia and Gloucester, N. J.[2] The order of the Commission presently attacked arose from six applications to the Commission under §409 of the Public Utility Code, Act of May 28, 1937, P. L. 1053, 1075, 66 PS §§1101, 1179, which requires Commission approval of the construction, alteration, relocation or

---

[1] Reported 184 Pa. Superior Ct. 280, 133 A. 2d 853.

[2] As stated by Judge HIRT in *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 180 Pa. Superior Ct. 315, 317, 119 A. 2d 855: "The Delaware River Port Authority is a public corporate instrumentality with powers conferred upon it by a compact between the Commonwealth of Pennsylvania and the State of New Jersey pursuant to enabling legislation of both states. In the compact the Authority . . . with the consent of the Congress of the United States was empowered to construct a bridge for vehicular traffic across the Delaware River. The construction of the bridge with the approaches . . . constitutes a major highway project more than 6 miles in length and costing more than 90 millions of dollars. With the approaches it extends westwardly. from a connection with Black Horse Pike in Camden County, New Jersey, across the Delaware River to a point near Twenty-eighth Street and Vare Avenue in the City of Philadelphia. The suspension bridge itself is approximately 3,400 feet in length, crossing the river from Gloucester, New Jersey, to a point near the intersection of Packer and Delaware Avenues in Philadelphia."

abolition of any highway-rail crossing.[3]   Compliance
with the order made pursuant to these applications and
with the general over-all plans of the Authority for
the construction of the bridge and its westerly ap-
proaches required the Electric Company to relocate
certain of its facilities which were located in or over
public streets under standard rent-free licenses from
the City of Philadelphia.[4]   The Commission placed the
entire cost of such relocation of the Electric Company's
facilities upon the Authority.   From a unanimous af-
firmance of this order and allocation of costs by the
Superior Court, we granted an allocatur.

The Authority attacks the Commission's order in
three principal respects: (1) that the Commission
lacked the authority to allocate the costs of relocating
non-transportation utility facilities as an incident to
a highway-rail crossing construction, abolition or re-

---

[3] Four applications were instituted jointly by the Pennsylvania
and Baltimore & Ohio Railroads; two applications were initiated
by the Authority.

[4] As stated in the Authority's brief there are "four distinct
factual situations where, in connection with the construction of the
bridge approaches, the Philadelphia Electric Company had to move
its electric power lines: 1. Where the bridge approaches *did cross*
railroad and street railway tracks, and . . . [the] Authority filed
its plans with the . . . Commission for approval of the crossing . . . .
2. Where the bridge approaches *did not cross* any railroad or street
railway tracks and no parties applied to the . . . Commission for
approval of crossing plans (no litigation pending).   3. Where the
bridge approaches *did not cross* any railroad or street railway
tracks, but where the railroads applied to the . . . Commission for
approval of track construction to cross under the bridge approach,
which work *did require* the Philadelphia Electric Company to move
some of its facilities . . . .   4. Where the bridge approaches *did not
cross* any street railway or railroad tracks and where, the railroads
had petitioned the . . . Commission for permission to remove the
tracks and abandon existing railroad crossings, which work *did
not* in any way, require the . . . Electric Company to move any of
its lines . . . ."

location; (2) that, even if such authority be conceded, the Commission exceeded its jurisdiction in some of the factual situations presented in this case; and (3) that, in any event, the Commission committed an abuse of discretion in placing the *entire* cost of the relocation upon the Authority.

Initially, the power of the Commission to allocate costs in highway-rail crossing situations must be considered. In so doing we must bear in mind that *the Commission's authority must either arise from the express words of the statute or by strong and necessary implication therefrom.* As President Judge RHODES aptly said in *West Penn Railways Company v. Pennsylvania Public Utility Commission,* 135 Pa. Superior Ct. 89, 99, 4 A. 2d 545: "The area of administrative activity is not boundless; the commission's power is statutory; and the legislative grant of power to act in any particular case must be clear (Day v. Public Service Commission et al., 312 Pa. 381, 384, 167 A. 565)."

The extent of the Commission's authority and jurisdiction to act must be found within Sections 409-412, inclusive, of the Public Utility Code, supra. Section 409(a) prohibits certain acts without a "prior order" of the Commission: (1) the construction[5] *by a certain type of public utility—a utility engaged in the transportation* of passengers or property, i.e. a railroad or railway—of its facilities across the facilities of another railroad or railway or across a highway, either at, above or below grade; (2) the construction of a highway across the facilities of a railroad or railway, (3) the alteration, relocation or abolition of any crossing constructed under (1) and (2), supra. Section 409(b) vests in the Commission the "exclusive power"

---

[5] Emphasis supplied throughout.

to: (1) appropriate property for any *such* crossing; (2) approve the manner of construction, alteration, relocation, or abolition of *such* crossing; (3) regulate the maintenance, operation and protection of *such* crossing "to effectuate the prevention of accidents and the promotion of the safety of the public". Section 409(c) vests "exclusive power" in the Commission, on its own motion or on complaint, to order a constructed crossing to be relocated, altered or abolished, and, in so doing, may open new highways to connect such crossing with an existing highway or make the crossing more available to public use or vacate or abandon highways rendered unnecessary for public use by the construction, relocation or abandonment of such crossings; the Commission may order the work done by any public utility or municipal corporation concerned or by the Commonwealth. Section 409(d) outlines the procedure to be followed where property is appropriated by the Commission. Section 410 gives the Commission the power to order the removal of all structures within the lines of the appropriation.

Section 411 must be read in connection with Section 409; the former relates exclusively to the subject matter of the latter. The Electric Company urges that the Commission's statutory authority for the allocation of the relocation costs of facilities of a non-transportation utility is found in the phrase "expense of such construction . . ." in Section 411 and that the Legislature intended to include a non-transportation utility's relocation costs as an expense of the construction, the relocation or the abolishment of a highway-rail crossing.

Section 411 provides the method of determining reimbursement in highway-rail crossing cases and provides for reimbursement in two separate and distinct classes of cases. It first provides for the determina-

tion of the compensation to be paid as damages to owners of adjacent property taken, injured or destroyed. It then provides: ". . . Such compensation, *as well as the expense of such construction, relocation, alteration, protection, or abolition of any crossing,* shall be borne and paid, as hereinafter provided, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine, unless such proportions are mutually agreed upon and paid by the interested parties." Section 412 significantly empowers the Commission on its own motion or complaint, to prescribe the service and facilities, including the "crossing of facilities", standards, classifications, regulations and practices to be furnished and followed by *"any* or *all* public utilities", as contrasted with the limited description of utilities in §409 and §411.

Historically, in Pennsylvania, non-transportation public utilities have been permitted to occupy highway rights-of-way free of cost, subject and subordinate to the State's police power to control and regulate the highways for the benefit of the public. *Delaware River Joint Commission Case,* 342 Pa. 119, 19 A. 2d 278; *Philadelphia Electric Company v. Commonwealth,* 311 Pa. 542, 166 A. 892; *Scranton Gas and Water Co. v. Scranton City,* 214 Pa. 586, 64 A. 84; *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 360, 78 A. 2d 46; *Bell Telephone Company of Pennsylvania v. Pennsylvania Public Utility Commission,* 139 Pa. Superior Ct. 529, 12 A. 2d 479; *Springfield Water Co. v. Phila. & Garrettford Ry.,* 45 Pa. Superior Ct. 516. Such utilities obtain no property rights in the highway and can be ordered by a competent state or municipal agency to relocate their facilities at their own expense (*Dela-*

*ware River Joint Commission Case,* supra; *Bell Telephone Co. of Pennsylvania v. Lewis, Sec'y.,* 317 Pa. 387, 177 A. 36; *Duquesne Light Co. v. Pittsburgh,* 251 Pa. 557, 97 A. 85). The reason obviously is that since these utilities occupy the highways free of cost they should not be entitled to compensation if they are forced to relocate their facilities because of highway improvements.[6] This common law rule, however, can and may be abrogated by a *specific statutory mandate* directing the payment of relocation costs to the nontransportation utilities involved. See: *Philadelphia Electric Co. v. Commonwealth,* 311 Pa. 542, 166 A. 892; *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 360, 367, 78 A. 2d 46.

The Superior Court evidently found such a statutory mandate expressed in §411.[7] With this conclusion we

---

[6] As to improvements other than on highways: *Philadelphia Electric Company v. Philadelphia,* 301 Pa. 291, 152 A. 23; *Postal-Telegraph Cable Co. v. Pennsylvania Public Utility Commission,* 154 Pa. Superior Ct. 340, 35 A. 2d 535.

[7] The basis of the Superior Court's decision in this respect is twofold: (1) in those applications wherein the Authority requested Commission approval of the construction of two crossings where the bridge approaches cross rail facilities the Court relied upon *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 315, 119 A. 2d 855, which decision assumed without any discussion the authority of the Commission to allocate to the Authority the relocation costs of the Electric Company; (2) in the other applications the Court found that the construction of the bridge approaches was the "common cause which underlies the necessity for relocating both the rail and the electric facilities" (p. 285) and "to hold that our jurisdiction is circumscribed by the extent to which the rail relocations have themselves caused the relocation of other utilities incidentally affected, would be to distort the intent of the legislature in sections 409 and 411 . . ." (p. 285). Cf: Both majority and minority opinions in *Department of Highways of Commonwealth v. Pennsylvania Public*

cannot agree. A legislative intent to effect any departure from a firmly established policy of the law must be expressed in clear and unequivocal language. Well-settled and established principles of law are not to be regarded as changed unless the terms of the new legislation unmistakably and unambiguously indicate such a change. "In the absence of express declaration, the law presumes that the act did not intend to make any change in the common law, for if the legislature had that design they would have expressed it. Petit v. Fretz's Executor, 33 Pa. 118": *Buradus v. Gen. Cement Prod. Co. et al.,* 159 Pa. Superior Ct. 501, 506, 48 A. 2d 883 [citing cases].

An examination of §409 and §411 does not reveal any, let alone a clear, legislative intent to change the well-settled policy of the law that non-transportation public utilities must bear the expenses of relocating their facilities when the relocation is brought about by governmental exercise of the police power such as in construction, relocation, alteration, protection or abolition of a highway-rail crossing. Sections 409 and 411 refer exclusively and solely to highway-rail crossings; the authority which §411 vests in the Commission to allocate "the expense of *such* construction, relocation, alteration, protection or abolition of any crossing" is limited and restricted to those expenses which have been incurred by the railroad, railway or the owners of the highway, i.e., the State, state agency, or municipal corporation. To hold that the Commission has the authority to allocate the expenses of relocating facilities of a non-transportation utility is to ignore the manifest limitation and restriction of the subject matter of §409 and §411, render meaningless the pro-

---

*Utility Commission,* 185 Pa. Superior Ct. 1, 136 A. 2d 473, presently on appeal to this Court, on the identical question.

visions of §412 and effect a complete change in the long established policy of the common law on the subject without any expressed legislative intent to effect such a change. The general rule has always been that the Commonwealth or its agency cannot be required to bear the costs of relocating facilities of any public utility. The only exception to this rule is that imposed by the Legislature in §411: that the Commonwealth may, in the discretion of the Commission, be required to pay the relocation costs of the facilities of a transportation public utility (as described in §409) and *only* then when such costs have been expended in the construction, relocation, alteration, protection or abolition of a highway-rail crossing accomplished under the procedure prescribed in §409. The Electric Company and the Commission would have this Court usurp the legislative powers and declare an additional exception which the Legislature has not seen fit to declare. In the absence of a clearly expressed legislative intent in §411 to impose on the Commonwealth an obligation, in the Commission's discretion, to pay the relocation costs of a non-transportation public utility in any highway-rail crossing construction, etc. and under §409, we must follow not only the well established, but thoroughly logical, rule of the common law as enunciated by this Court for many years.

In *In re Elimination of Highway Railroad Crossing in Town of Cheektowaga, Erie County,* 259 App. Div. 141, 18 N.Y.S. 2d 613, aff'd. mem. 283 N.Y. 687, 28 N.E. 2d 409, the New York Courts were faced with a contention somewhat similar to that presently advanced. An amendment to the statute provided that the expense of any grade crossing elimination should include "incidental improvements connected therewith". The utility there argued that this provision was intended to include the cost of the relocation of

its water mains made necessary by a grade crossing elimination. The Court stated: "Prior to the constitutional amendment, the common-law obligation of a utility to relocate its own structures at its own expense in connection with a grade crossing elimination program was definitely declared. Transit Commission v. Long Island R. Co., 253 N.Y. 345, 171 N.E. 565. That common-law obligation continues until the Constitution and statute expressly provide otherwise. The common law must be held no further abrogated than the clear import of the language used absolutely requires. Transit Commission v. Long Island R. Co., supra; Bertels v. Nunan, 92 N.Y. 152, 153, 158, 44 Am. Rep. 361. We find no express direction in the Constitution or in the Enabling Act that relieves the appellant of its common-law obligation."

The Electric Company, however, argues that, since the prior public utility law contained an express prohibition against the payment of utilities for relocation costs,[8] the legislative failure to re-enact this provision in §411 demonstrates, by negative implication, that the Legislature intended that such expenditures were no longer to be borne by such utilities. While settled law cannot and should not be overridden by any such negative implication, it might be noted that the prior law also contained a provision that payments made by the Commonwealth or municipality were not to be included

---

[8] ". . . And provided further, That where the order of the commission shall, as part of the regulation of the construction, relocation, alteration, or abolition of any crossing aforesaid, require, as incidental thereto, a relocation, changes in or the removal of any adjacent structures, equipment or other facilities of any telegraph, telephone, gas, electric light, water-power, water pipe-line, or other public service company, said company shall, at its own expense, relocate, change, or remove such structures, equipment, or other facilities, in conformity with the order of the commission . . ." Act of July 26, 1913, P. L. 1374, 1410.

within the rate base of any utility.[9]  Although this provision was also omitted from §411, such omission does not manifest a legislative intent to include such payments under the present law.  The Electric Company ignores the alternative argument that the obligation of a non-transportation utility to bear its own relocation costs was so generally recognized and accepted that it was unnecessary to reenact it in the present law.[10]  In any event, as stated by the Court in *Western New York Water Co. v. Brandt,* 259 App. Div. 11, 18 N.Y.S. 2d 128, 133, appeal dism., 283 N.Y. 686, 28 N.E. 2d 408: "At the time of the adoption of the amendment in question a utility was required to bear the expense of relocating its main. *The new provision should be construed as not abolishing the established law in the absence of a specific declaration to that effect.''* (Emphasis supplied).

Two recent decisions of our Superior Court are regarded as supporting the conclusion reached by that Court in the present case: *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 180 Pa. Superior Ct. 315, 119 A. 2d 855, allocatur refused, 180 Pa. Superior Ct. xxix; *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission,* supra.  In the *Delaware* case, the Court *assumed without discussion* the Commission's authority to allocate the

---

[9] ". . . Provided, that where any portion of the cost and expense thereof shall have been or shall be borne, in the future by the Commonwealth or any municipal corporation, such portion shall not be taken into account by the commission in fixing any valuation, for any purpose, under any of the provisions of this act . . ." Act of 1913, supra, 1410.

[10] The Public Utility Commission itself did not attempt to utilize §411, enacted in 1937, to allocate the cost of the relocation of facilities of public utilities, other than railroads and railways, upon the Commonwealth until the *Delaware* case, infra, in 1955, although it had numerous opportunities to do so.

cost to the Commonwealth. In the *Philadelphia Suburban Water* case, supra, although there is dicta indicating that the Commission could impose the cost of relocating the facilities upon the Commonwealth, the specific holding therein sustained the Commission's allocation of the costs to the private utility. There was nothing decided in either of those cases inconsistent with the views herein expressed.

Section 411 does not empower the Commission to impose upon the Commonwealth, or its agent, the Authority, the costs of relocating the facilities of non-transportation utilities. In the absence of any express and clear statutory language, we cannot surmise that the Legislature intended to abrogate the long and established rule of law on this subject.

In view of our conclusions that the Commission lacked the statutory authority to make this order, it is unnecessary to discuss the Authority's other arguments.

Order reversed. The record is remanded to the Commission for action not inconsistent with the views expressed in this opinion.

---

Dissenting Opinion by Mr. Justice Bell:

The Pennsylvania Public Utility Commission, after hearing, entered an order allocating costs of relocation of certain facilities against the Delaware River Port Authority. The order of the Public Utility Commission was affirmed by a unanimous Superior Court in an opinion written by Judge Hirt.

The Superior Court affirmed the Commission's findings that the Electric Company moved a number of its facilities upon the order of the Authority in connection with the abandonment and relocation of railroad tracks due to the Authority's bridge approach.

The abolition of the crossings and the relocation of the railroad tracks were the direct consequence of the construction by the Authority of the westerly approach to the Delaware River Bridge. The other crossing alterations and the affected facilities were found to be part and parcel of the same indivisible bridge project.

The Court said, inter alia (page 286) : ". . . the fact is important that the abolition of the crossings, ordered by the Authority was for the benefit of the Authority alone and not the railroads nor of the electric utility. . . . [and] It would be most inequitable to put these costs, where they ultimately would rest, upon the rate payers of the Electric Company" instead of on the Authority.

Notwithstanding the able argument of counsel for the Authority and the able opinion of Mr. Justice JONES, I believe that the Superior Court was correct and I would affirm on the opinion of Judge HIRT.