**BELL ATLANTIC—PENNSYLVANIA, INC., Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, TURNPIKE COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1997.

Decided Dec. 10, 1997.

Scott T. Wyland, Harrisburg, for petitioner.

William P. Bresnahan, Pittsburgh, for respondent.

Before FLAHERTY and LEADBETTER, JJ., and SILVESTRI, Senior Judge.

FLAHERTY, Judge.

Before this court is a motion for summary judgment filed on behalf of Bell Atlantic–Pennsylvania, Inc. (Bell) and a motion for summary relief filed by the Turnpike Commission (Commission). The parties have stipulated that Bell provides telecommunication

service to customers in Pennsylvania and is a public utility. The Commission is an independent agency of the Commonwealth which is responsible for the construction and operation of certain limited access toll roads within Pennsylvania. The Commission operates under the authority of the Turnpike Organization, Extension and Toll Road Conversion Act (Turnpike Act).[1] Bell's telecommunication facilities include copper and fiberoptic wires and cables, aerially suspended from poles or placed underground or on bridge structures, and located in public and private rights-of-way.

By act of legislature, the Commission was charged with constructing the Beaver Valley Expressway. Before construction commenced, the Commission required Bell to relocate, restore, repair and/or protect its facilities located within the path of the planned construction of the Beaver Valley Expressway. But for the Commission's construction project, Bell had no reason or intent to relocate its facilities. In relocating its facilities, Bell incurred costs of $386,253.73. The Commission reimbursed Bell for its relocation costs in private rights-of-way in the amount of $89,685.30. However, the Commission has not reimbursed to Bell the balance of $296,568.43 for its relocation costs in public rights-of-way.

By act of legislature, the Commission was also charged with constructing the Greensburg Bypass. Again, before construction, the Commission required Bell to relocate its facilities located within the path of the planned construction. The relocation costs incurred by Bell amount to $1,388,094.00. The Commission reimbursed Bell for its relocation costs in private rights-of-way for the Greensburg Bypass in the amount of $123,-316.91. The Commission has not reimbursed Bell the remaining $1,264,777.09 for its relocation costs in public rights-of-way at the Greensburg Bypass.

Bell's total relocation costs amount to $1,774,347.73, of which $213,002.21 has been reimbursed by the Commission. The remaining $1,561,345.52 which relates to relocation from public rights-of-way, has not been reimbursed by the Commission.

On June 23, 1995, Bell filed a petition for review in the nature of a complaint in mandamus against the Commission seeking reimbursement for Bell's costs of relocating its utility facilities from public rights-of-way located in the route of the Beaver Valley Expressway and the Greensburg Bypass. The parties filed stipulations of fact on May 30, 1997. On that same date, Bell filed a motion for summary judgment, and the Commission filed a motion for summary relief, both of which rely exclusively upon the facts set forth in the stipulations.

The issue in this case is whether the Commission is statutorily required to reimburse Bell for relocation of its telecommunication facilities, where those facilities where caused to be relocated from public rights-of-way by the Commission's construction of new roadways.

■ A motion for summary judgment may be granted only when the pleadings, depositions, answers to interrogatories, admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. *In Re Superior–Pacific Fund, Inc.,* 693 A.2d 248, 251 n. 2 (Pa.Cmwlth.1997). As to summary relief, Pa. R.A.P. 1532(b) provides that:

(b) Summary Relief. At any time after the filing of a petition for review in an appellate or original matter the court may on application enter judgment if the right of the applicant thereto is clear.

Thus, this court must determine whether it is clear from the undisputed facts that either party has a clear right to the relief requested. *Gelnett v. Department of Transportation,* 670 A.2d 217, 219 (Pa.Cmwlth.1996).

■ *Delaware River Port Authority v. Pennsylvania Public Utility Commission,* 393 Pa. 639, 145 A.2d 172 (1958), states the common law rule of highway occupancy of utilities in Pennsylvania:

Historically, in Pennsylvania, non-transportation public utilities have been permitted to occupy highway rights-of-way free of cost subject and subordinate to the

---

1. Act of September 30, 1985, P.L. 240, *as amend-*     *ed,* 36 P.S. §§ 651.1–651.20.

state's police power to control and regulate the highways for the benefit of the public. *Such utilities obtain no property rights in the highway and can be ordered by a competent state or municipal agency to relocate their facilities at their cost.* The reason is obviously is that since these utilities occupy the highways free of cost, they should not be entitled to compensation if they are forced to relocate their facilities because of highway improvements. *This common law rule, however, can and may be abrogated by a specific statutory mandate directing the payment of relocation costs to the non-transportation utilities involved.* (Emphasis added.)

In addition, the location by a public utility of its facilities within public rights-of-way is merely a privilege, which is by definition revocable and which does not constitute a proprietary interest in the permanent location of those facilities in the public rights-of-way. *Philadelphia Suburban Water Co. v. Pennsylvania Public Utility Commission,* 168 Pa. Superior Ct. 360, 78 A.2d 46 (1951).

■ Thus, the common law rule is that public utilities such as Bell obtain no property rights in the highway and can be ordered to relocate their facilities at their own expense. Bell maintains however, that the Turnpike Act abrogated the common law rule by providing an express duty on the Commission to compensate for all damages regardless of whether they occur on public or private rights-of-way. Specifically, Bell relies on Section 10(c) of the Turnpike Act, 36 P.S. § 651.10(c), which provides: [2]

*Restoration of property.—All public or private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and* placed in their original condition as nearly as practicable or adequate compensation made therefor out of funds provided under authority of this act. (Emphasis added.)

Bell maintains that, in accordance with the above language, the Commission is statutorily mandated to pay Bell for the cost of relocating its facilities which are located on "all public or private property."

■ We agree with the Commission however that the common law rule, which holds that utility companies must bear the costs of relocating their facilities from public rights-of-way, has not been abrogated. Section 10(c) of the Turnpike Act and Section 4 of the Act of May 21, 1937, P.L. 21, *as amended,* 36 P.S. § 652d, speak only of compensation for costs of "damaged or destroyed" property; it does not include property which is "relocated". "The common law rule can be abrogated by a *specific statutory mandate.*" *Pennsylvania Gas and Water Company v. Nenna & Frain, Inc.,* 320 Pa. Superior Ct. 291, 467 A.2d 330, 334 (1983) (emphasis added). In this case, however, there is no specific statutory mandate which states that relocation costs will be borne by the Commission.[3]

Because it is clear that the Commission has no duty to compensate Bell for the cost of relocating its facilities, the Commission's motion for summary relief is granted.

*ORDER*

NOW, December 10, 1997, the motion for summary relief filed by the Commonwealth of Pennsylvania, Turnpike Commission, is granted. The motion for summary judgment filed by Bell Atlantic–Pennsylvania, Inc. is denied.

---

**2.** Section 652d of the Turnpike Act, 36 P.S. § 652d, contains similar language.

**3.** We note that in accordance with 15 Pa.C.S. § 1511(e), Bell has a right to occupy public transportation rights of way subject to the "lawful and reasonable regulations of the agency having responsibility for the maintenance thereof." In this regard Commission maintains that Bell must comply with Part 5 of the Department of Transportation's Design Manual which provides that "[f]acilities within public rights-of-way ... will not be eligible for reimbursement and will be adjusted at the expense of the utility...." Al-

though Commission maintains that it adopted this regulation on "June 9, 1989, at Chapter 3, § 3" (Commission's brief at 17) it fails to name the document where it adopted Part 5 of the Department of Transportation's Manual. In accordance with 45 Pa.C.S. § 702(2)(3) all regulations and statements of policy must be codified in the Pa.Code and all documents to be codified in the Pa.Code must be published in the Pa. Bulletin. 45 Pa.C.S. § 724(a). Thus, absent compliance with the above, Part 5 does not have the force and effect of a regulation.

The decision in this case was reached before the death of SILVESTRI, Senior Judge.

LEADBETTER, J., files concurring opinion.

LEADBETTER, Judge, concurring.

While I do not disagree with the majority opinion, I write separately to further explain the basis upon which my decision rests. As noted by the majority, Bell Atlantic argues that the common law rule described in *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 393 Pa. 639, 145 A.2d 172 (1958), has been abrogated by the Turnpike Organization, Extension and Toll Road Conversion Act, Act of September 30, 1985, P.L. 240, *as amended*, 36 P.S. § 651.1 *et seq.* That statute provides, in pertinent part:

(c) Restoration of property.—All public or private property damaged or destroyed in carrying out the powers granted by this act shall be restored or repaired and placed in their original condition as nearly as practicable or adequate compensation made therefor out of funds provided under the authority of this act.

36 P.S. § 651.10(c)[1]

Bell argues, in essence, that although its property has neither been "damaged" nor "destroyed", it would have been had Bell not relocated it prior to the highway construction. Thus, the relocation of its property was a mitigation of the damages the Commission would have had to pay if Bell had left its lines in place. The flaw in this argument is that if the common law rule applies, Bell had no right to leave the lines in place, and therefore could not collect damages for the direct result of its refusal to comply with its legal obligation to move the lines upon the Commission's request.

Thus, the question becomes whether the legislature intended, by this "damaged or destroyed" language, to abrogate the common law that utility companies are not entitled to compensation for *relocation* costs.

With no guidepost other than the words of the Turnpike Act, this issue would be far from clear. Fortunately, however, we are not left to decide this question in such a vacuum.

In response to the common law rule and to the decision in *Delaware River Port Authority*, in 1963 the legislature amended Section 411(a) the Public Utility Law of 1937 to provide, with respect to highway rail crossings, that:

[T]he cost of...relocation...of facilities at or adjacent to such crossing which are used in any kind of public utility service, shall be borne and paid, as provided in this section, by the public utilities or municipal corporations concerned, or by the Commonwealth, in such proper proportions as the commission may, after due notice and hearing, determine....

*City of Philadelphia v. Philadelphia Electric Co.*, 504 Pa. 312, 320, 473 A.2d 997, 1001 (1984) (setting forth text of 1963 amendment).[2] Thus well before enactment of the Turnpike Act provision at issue here, the legislature had specifically abrogated the common law rule in the limited area of highway rail crossings in clear and unambiguous terms. See *City of Philadelphia*. In light of this historical background, I must conclude that the omission of similar unambiguous language in the Turnpike Act was purposeful, and that no intent to abrogate the common law rule may be inferred here. Accordingly, I believe that the majority correctly concludes that the common law is still viable with respect to utilities occupying right of ways along the Turnpike.

---

**1.** This language is also found as the last sentence of 36 P.S. § 652d.

**2.** The Public Utility Law of 1937 was repealed in 1978 and simultaneously reenacted at 66 Pa.C.S. § 101 et seq. Former § 411(a) of the 1937 Act now appears at 66 Pa.C.S. § 2704(a).