598 A.2d 627

**VALLEY RURAL ELECTRIC COOPERATIVE, INC., Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 13, 1991.

Decided Oct. 21, 1991.

132

D. Mark Thomas, for petitioner.

Donna Stanek Zehner, Asst. Counsel, for respondent.

John S. Alexander, for intervenor, Pennsylvania Elec. Co.

Before DOYLE and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Valley Rural Electric Cooperative, Inc. (Valley) petitions for review of the Opinion and Order of the Pennsylvania Public Utility Commission (PUC), entered July 16, 1990, which denied Valley's Exceptions to the Initial Decision filed by an Administrative Law Judge.

Pennsylvania Electric Company, a.k.a. Penelec, is a Pennsylvania public utility corporation. Valley is an electric cooperative corporation; both Penelec and Valley furnish retail electric service, *inter alia*, within portions of Metal Township, Franklin County. Since before July 30, 1975, Penelec has owned a 23 KV distribution line, known as the KRA line, which, as herein relevant, runs in a north-south direction from the Spring Run switching station to Valley's Metal Substation. The issue in this case involves the determination of which electric supplier is entitled to furnish service from a 5.14 mile long portion of the KRA line which runs from Valley's Metal Substation north to Penelec's Fannettsburg Substation (the Fannettsburg Substation is located between the Metal Substation and the Spring Run switching station). The following Figure 1 depicts the KRA line as relevant in this matter.

FIGURE 1                                        (Not to scale)

---

On June 9, 1959, Valley and Penelec entered into a contract by which Valley was to receive wholesale service directly from Penelec. In the early 1960s, Valley began to experience an increase in load demand. The Metal Substation was constructed to meet these demands. Penelec prepared a report, dated April 3, 1964, which projected future load growth and projected the means for adequate response to the growth. The report proposed the construction of the portion of the KRA line from the Spring Run switching station south to the Metal Substation (at that time, the portion of the line which runs east-west through the Spring Run switching station and the portion which runs north from the switching station were already in existence). Construction was begun on the KRA line facilities from the

switching station south to the Fannettsburg Substation on July 6, 1964 and from the Fannettsburg Substation south to the Metal Substation on July 24, 1964. Those portions of the line were first energized on October 30, 1964 and November 4, 1964 respectively. On November 25, 1964, the 1959 contract between Valley and Penelec was amended by adding a new so-called "delivery point" or "metering point" at the Metal Substation and providing for Penelec to supply wholesale service to Valley at that location.

As relevant, the customers in the district are the Path Valley Estates Subdivision (including the residences of Jesse and Katie Bawell and Randy and Camille Harr), the United Telephone Company and the residences of Robert Coons, Kirk and Bobbi Sue Umbrell, James and Ann Shindledecker, and Glenn and Mabel LeBlanc, all of whom are located in an unincorporated area of Metal Township. Penelec furnishes the electric service to the United Telephone Company and to the Coons residence; Valley furnishes electric service to the residences of the Umbrells, Shindledeckers, LeBlancs, and to the Bawells and Harrs in the Path Valley Estates Subdivision. Valley has notified Penelec of its intention to furnish electric service to all of the lots in the Path Valley Estates Subdivision. Penelec has never given its consent to Valley's furnishing of electric service to any of the lots in the subdivision, nor to the aforementioned customers of Valley.

■ The determination of which electric supplier is entitled to furnish electric service to a consumer is controlled by the provisions of the Retail Electric Supplier Unincorporated Area Certified Territory Act (Act 57), which was in effect at the time of these proceedings.[1] Section 5(b) of Act 57, 15 P.S. § 3281(b) provides:

(b) Except as provided in subsections (c) and (e) any new electric-consuming facility located in an unincorporat-

1. Act of July 30, 1975, P.L. 113, *formerly* 15 P.S. §§ 3277–3287, repealed by Section 401(a) of the GAA Amendments Act of 1990, Act of December 19, 1990, P.L. 834, 15 Pa.C.S. § 21401(a). A similar act is now found in 15 Pa.C.S. §§ 7351–7359.

ed area which has not as yet been included in a map issued by the commission, pursuant to section 4(c), or certified, pursuant to section 4(d), shall be furnished retail electric service by the retail electric supplier which has an existing distribution line in closer proximity to such electric-consuming facility than is the nearest existing distribution line of any other retail electric supplier. Any disputes under this subsection (b) shall be resolved by the commission.

■ On or about April 17, 1989, Penelec filed a Complaint before the PUC against Valley pursuant to Act 57. The Complaint alleged that the KRA line is an "existing distribution line" within the meaning of Section 2 of Act 57, 15 P.S. § 3278,[2] and, further, that the KRA line is in closer proximity than is any of Valley's "existing distribution lines" to the residences of the Umbrells, Shindledeckers, LeBlancs, and all of the lots in the Path Valley Estates Subdivision. All of the foregoing constitute new electric-consuming facilities within the meaning of Section 5(b) of Act 57, 15 P.S. §§ 3281(b), in that none of them were in existence as of July 30, 1975, the effective date of Act 57. Penelec sought a declaratory order that it is the only appropriate supplier of retail electric service to the residences of the Umbrells, Shindledeckers and LeBlancs and to all of the lots in the Path Valley Estates Subdivision and directing Valley to cease and desist from furnishing retail electric service to those consumers.

In its Answer and New Matter, Valley alleged that the KRA line is actually a number of lines and that the subject 5.14 mile long portion of the line is not an "existing distribution line" because Penelec used it to furnish wholesale electric energy to Valley as of July 30, 1975, thus it is not being used for "retail electric service" as that term is

2. Section 2, 15 P.S. § 3278, sets forth the definition of "existing distribution line" as follows:

"Existing distribution line" means an electric line of a design voltage of 35,000 volts phase to phase or less which on the effective date of this act (i) is located in an unincorporated area; and (ii) is being or has been used for retail electric service.

defined in Section 2 of Act 57, 15 P.S. § 3278,[3] and is not determinative of retail service territory rights under Act 57. Valley further alleged that its own "existing distribution lines" are in closer proximity to the subject new electric-consuming facilities than any Penelec "existing distribution line," giving Valley the right to furnish electric service to them. By New Matter, Valley alleged that at some time subsequent to July 30, 1975, Penelec began furnishing, and continues to furnish, electric service to the United Telephone Company, that Penelec never advised Valley of its intention to provide said service to the United Telephone Company and that Valley never gave its consent to Penelec to do so. Valley alleged that its "existing distribution lines" are in closer proximity to the United Telephone Company than those of Penelec. Valley sought an order dismissing Penelec's Complaint and directing Penelec to cease and desist from furnishing electric service to the United Telephone Company.

In its Reply to Valley's New Matter, Penelec alleged that its furnishing of electric service to the United Telephone Company is lawful under Act 57 because its KRA line is an "existing distribution line" pursuant to Act 57 and is in closer proximity to that consumer than is any of Valley's "existing distribution lines."

A hearing was held before an Administrative Law Judge (ALJ) on October 5, 1989, during which three witnesses for each party testified, various exhibits were admitted into evidence and a written Stipulation of Facts containing 35 stipulations, as well as two oral stipulations, were entered into the record. Both parties also filed briefs. On March 14, 1990, the ALJ issued an Initial Decision. The ALJ made 62 findings of fact (the first 37 of which were the stipulations entered by both parties.) The parties stipulated that a portion of the Penelec line is located in closer proximity to

3. Section 2, 15 P.S. § 3278, provides:
   Retail electric service . . . does not include wholesale electric energy furnished by an electric supplier to another electric supplier for resale.

the residences of the Umbrells, Shindledeckers, LeBlancs, Bawells and Harrs, and to each lot in the Path Valley Estates Subdivision, than is any Valley facility which constitutes an "existing distribution line" within Act 57. (Findings of Fact Nos. 13, 14; R.R. p. 300a.) The parties also stipulated that, other than the Penelec line, a portion or portions of Valley's "existing distribution lines" are in closer proximity to each lot in the aforesaid Path Valley Estates Subdivision and to the Umbrell, Shindledecker, LeBlanc, Bawell and Harr residences and to the United Telephone Company than any portion of any Penelec facility which constitutes an "existing distribution line" within Act 57. (Finding of Fact 21; R.R. p. 301a.) The ALJ determined that the 5.14 mile long portion of the KRA line is not a separate and distinct line but rather is an integral extension of the whole KRA line; thus the ALJ found that Penelec "is the only appropriate supplier of retail electric service" to the residences of the Umbrells, Shindledeckers, LeBlancs, Bawells and Harrs, to the United Telephone Company and to all of the lots in the Path Valley Estates Subdivision. (Findings of Fact Nos. 61, 62; R.R. pp. 309a–310a.) The ALJ issued an order declaring Penelec to be the sole appropriate supplier of retail electric service to the above consumers and directing Valley to cease and desist from furnishing electric service to any of the aforesaid consumers. The ALJ also denied the relief requested by Valley in its New Matter.[4]

On April 2, 1990, Valley filed Exceptions to the ALJ's Initial Decision before the PUC. On July 6, 1990, a public meeting was held. On July 16, 1990, the PUC entered an order denying the Exceptions filed by Valley and affirming the order of the ALJ. 73 Pa.P.U.C. 154.

4. The order also directed Valley, upon receipt of an inquiry regarding service or a request for service with respect to any lot in the Path Valley Estates Subdivision or to any new electric-consuming facility located in closer proximity to Penelec's KRA line than to any Valley "existing distribution line," to inform the party making such inquiry or request that Penelec is the only lawful supplier of retail electric service thereto.

Valley raises the following question before us: whether Penelec's 5.14 mile long line is an "existing distribution line" within the meaning of Act 57?

■ Our scope of review is limited to determining whether constitutional rights have been violated, an error of law has been committed, or whether the findings of the PUC are supported by substantial evidence. *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 134 Pa.Commonwealth Ct. 53, 578 A.2d 75 (1990).

Valley argues that the PUC committed an error of law in its interpretation of Act 57 by concluding that the 5.14 mile long portion of the KRA line is an integral part of the whole KRA line and by concluding that the definition of "retail electric service" at Section 2 of Act 57, 15 P.S. § 3278, excludes only those lines providing wholesale electric energy exclusively.

Valley contends that the evidence of record supports a finding that the subject portion of the KRA line is separate and distinct from the whole KRA line. Valley points to testimony which stated that the 5.14 mile long portion was constructed for the purpose of providing "additional support to the Valley Rural Facilities in the Metal area" (N.T., 10/5/89, p. 23, R.R. p. 62a) and to Penelec's position before the Federal Power Commission in its 1972 rate filing, where it treated the subject portion as separate and wholesale in nature.

■ We begin with a review of the definition of "existing distribution line," set forth at Section 2 of Act 57, 15 P.S. § 3278:

"Existing distribution line" means an electric line of a design voltage of 35,000 volts phase to phase or less which on the effective date of this act (i) is located in an unincorporated area; and (ii) is being or has been used for retail electric service.

It is undisputed that the subject portion of the KRA line is located in an unincorporated area. Therefore, our next inquiry is whether that portion is being or has been used for

retail electric service. As defined, "retail electric service" does not include wholesale electric energy furnished by an electric supplier to another electric supplier.

The parties stipulated to the following:

5. Since on or about November 4, 1964, Valley's Metal Substation, located along Route 75 in Metal Township, Franklin County, Pennsylvania, has been furnished wholesale electric service from the Penelec Line for resale by Valley.

6. Since on or about January 28, 1975, the residence of Robert E. Coons, ... in Metal Township, Franklin County, Pennsylvania, has been furnished electric service from the Penelec Line.

7. Since on or about September 17, 1986, the United Telephone Company, located along Route 75, between the Path Valley Estates Subdivision and Valley's Metal Substation, in Metal Township, Franklin County, Pennsylvania, has been furnished electric service from the Penelec Line.

(R.R. p. 279a.)

Eugene Bettwy, a Division Engineering Manager, testified on behalf of Penelec. Mr. Bettwy authenticated an exhibit and described it as a copy of the work order that was used by Penelec to extend electric service to the Coons residence directly from the KRA line. The document established that the transformer was installed, and electric service began, on January 28, 1975. (N.T., 10/5/89, pp. 34–36, R.R. pp. 73a–75a; Exhibit 4, R.R. pp. 219a–220a.) Janjai Chayavadhanangkur testified on behalf of Valley. Mr. Chayavadhanangkur is the Senior Vice President of Southern Engineering Company, a consulting engineering firm. Mr. Chayavadhanangkur testified on cross-examination that there is no operational reason why an electric line could not serve both a wholesale and a retail customer. (N.T., p. 148, R.R. p. 187a.)

The ALJ made the following findings, which were adopted by the PUC:

54. Since on or about January 28, 1975, the Coons residence has been a retail customer of Penelec's and has been furnished by Penelec with retail electric service directly from the KRA line by a single phase 23 KV tap from the KRA line through a stepdown transformer (Penelec Exh. 4; N.T. 22–26, 34–36; see Stip. of Facts Paragraph 6).

55. There is no operational reason why an electric line cannot serve both wholesale and retail customers (N.T. 148).

(R.R. p. 308a.)

Penelec uses the KRA line to provide both wholesale and retail electric service. The definition of "existing distribution line" requires that retail electric service be provided from a line in order to qualify the line as an "existing distribution line." Clearly, that requirement is met in this case. We reject Valley's argument that testimony that the subject portion was constructed to provide wholesale electric service to Valley supports a finding that this portion is separate and distinct from Penelec's "existing distribution line." Nowhere in Act 57 does it provide that the original purpose for construction of a line dictates whether or not that line is an "existing distribution line."

Valley also argues that the fact that Penelec treated the subject portion of the line as separate and distinct from the KRA line in a 1972 rate filing case before the Federal Power Commission supports a finding that the portion is not an integrated part of the whole KRA line. We note that Penelec has met the requirements of the definition of "existing distribution line" as set forth in Act 57; prior categorization of the KRA line in a rate filing case is not relevant to this determination because the definition set forth in Act 57 is controlling.

Accordingly, we determine that substantial evidence exists to support the findings of the PUC, that no constitutional rights were violated nor any error of law committed, and we affirm the order of the PUC.

## ORDER

AND NOW, this 21st day of October, 1991, the order of the PUC, dated July 16, 1990, is affirmed.