624 A.2d 809

**Robert BARENSFELD, Petitioner,**

v.

**PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 3, 1993.

Decided April 23, 1993.

Robert J. Sugarman, for petitioner.

Kevin J. Moody, Asst. Counsel, for respondent.

Dennis P. Harkawik, for intervenors.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, McGINLEY, SMITH and FRIEDMAN, JJ.

PALLADINO, Judge.

Robert Barensfeld (Barensfeld) appeals an order of the Pennsylvania Public Utility Commission (PUC) denying the petition of Barensfeld and Citizens Opposed to Unsafe Power (COUP) to intervene in a PUC proceeding or to reopen and

remand that proceeding for consolidation with another proceeding.[1]  We affirm.

An understanding of this appeal necessitates a thorough discussion of two interrelated proceedings, a transaction proceeding and a siting proceeding, before the PUC.  In September 1990, Metropolitan Edison Company (Met–Ed), Pennsylvania Electric Company (Penelec), and Jersey Central Power and Light Company (JCP & L) (collectively, the GPU Companies[2]) entered into various interrelated agreements with Duquesne Light Company (Duquesne) concerning, in general, the joint design, construction, operation, maintenance, and ownership of a new high voltage transmission line to connect Duquesne's electrical system in the Pittsburgh area with GPU's system in the vicinity of Harrisburg; the reactivation, operation, and ownership of a power plant in the Pittsburgh area; and the purchase of energy and generating capacity.

On October 11, 1990, Met–Ed and Penelec filed these agreements with the PUC for approval (the transaction proceeding) under Chapter 21 of the Public Utility Code, 66 Pa.C.S. §§ 2101–2107 (concerning contracts with "affiliated interests").[3]  The filing stated, in pertinent part:

> [i]n addition to the within filing pursuant to Code Section 2102, subsequent filings are expected to be made, including, inter alia, applications pursuant to provisions of Code Section 1102 [concerning certificates of public convenience] and the Commission's electric transmission line siting regulations, seeking Commission authorization with respect to various specific elements of the interrelated transactions contemplated by [these] Agreements.  It is anticipated, therefore, that the Commission's approval of the within filing would be subject to such further authorizations, and to such other approvals as the Commission may deem appropriate.

1.  In this appeal, Barensfeld alleges that he represents approximately 9,400 property owners.

2.  Met–Ed, Penelec, and JCP & L are subsidiaries of General Public Utilities Corporation (GPU).

3.  JCP & L did not join in this filing.

By order dated February 14, 1991, the PUC referred the agreements to the Office of Administrative Law Judge for hearings and further proceedings. Notice of the transaction proceeding was given to Met–Ed, Penelec, and Duquesne customers via bill inserts and publication in newspapers of general circulation in the geographic areas served by those utilities.

On September 11, 1991, the GPU Companies and Duquesne filed a joint application with the PUC for siting approval of the transmission line (the siting proceeding) pursuant to, among other things, 52 Pa.Code §§ 57.71–57.77 (concerning applications to locate and construct transmission lines), and Chapter 11 of the Public Utility Code, 66 Pa.C.S. §§ 1101–1104 (concerning certificates of public convenience). The siting proceeding was subsequently referred to an administrative law judge for disposition, and Barensfeld has participated in that proceeding.

In his recommended decision issued on December 10, 1991, the administrative law judge in the transaction proceeding approved the affiliated interest agreements. Specifically, the administrative law judge concluded:

[b]ased on this record, the Transaction ... is reasonable and in the public interest. It will have a favorable impact on the economy of western Pennsylvania. It will reduce the revenue requirement to the customers of Duquesne. It will result in the efficient use of scarce generation assets which should be able to comply with the Clean Air Amendments of 1990. The New Line will bring an economic and needed source of capacity and energy to Met–Ed. Also, the Transaction will provide economic and reliability benefits to customers of Met–Ed as well as to others within the region served by the GPU System ...

It is not necessary to defer to the siting proceeding the consideration of whether the Transaction is in the public interest. This determination is clearly set forth in Section 2102(b), the subject, *inter alia,* of these proceedings and must be determined here. A finding that the Transaction is in the public interest, however, does not limit the scope of

the siting proceeding. Important issues in that proceeding will be the need for the New Line, the environmental impact of the New Line and the electromagnetic field ("EMF") affects [sic] of the New Line. *See*, 52 Pa.Code § 57.75(e)(3). If the Commission finds no need for the New Line or that the environmental impact or the EMF affects [sic] are detrimental, it might deny the siting application. If so, the Transaction itself could be jeopardized.

On January 8, 1991, Barensfeld and COUP filed, in the transaction proceeding, the "petition to intervene and for remand" which is the subject of this appeal. The petition alleged that the petitioners owned property within the right-of-way of the transmission line, and that such property was subject to an involuntary taking. In particular, the petition averred the following:

4. Petitioners have no intention whatsoever of voluntarily transferring their properties, and the effect of the [transaction] decision will be to represent a determination by the Commission, as required by 15 P.S. section 1511 [concerning a utility's power to condemn property] that the exercise of eminent domain to involuntarily take petitioners members' property involuntarily [sic] is in the public interest, and will thereby provide the legal basis and justification and authority for the applicants herein to condemn petitioners' property, as may or may not be supplemented by the [siting proceeding].

5. The recommended decision of the Administrative Law Judge [in the transaction proceeding] which is before the Commission for action ... purport[s] to find and determine that the construction of the transmission facility is in the public interest, and that the contracts for the sale of power is dependent on such facility, and that the contracts are in the public interests, and overall, that the transaction as a whole is in the public interest.

6. Since their properties are necessary for the implementation for [sic] the transaction, and since they have a constitutional right to due process with respect to their properties,

petitioners are and were entitled to notice and an opportunity to be heard in the within proceedings.

7. In the alternative, petitioners interest is directly and adversely affected by the outcome of the proceedings, and they have a right to intervene, as they now seek to do.

9. As has been requested by petitioners in the [siting proceeding], it is artificially segmenting and arbitrary to attempt to resolve the public interest of balancing issues, including those required under Article 1, Section 27 of the Pennsylvania Constitution [concerning Pennsylvania's public natural resources], without comprehensibly considering all of the benefits and detriments of the project in one proceeding; conversely, reasonable disposition precludes the segmented approach proposed by the applicants.

10. The only procedure which would assure and permit proper disposition of the applications is one in which the proceedings are consolidated.

By opinion and order entered March 16, 1992, the PUC denied the petition.[4] The PUC concluded, in pertinent part:

when the Duquesne/GPU Transaction record is viewed as a whole, it is apparent that the primary subject matter of the proceeding is the public interest as that interest pertains to the ratemaking treatment of the costs associated with the Transaction ...

Even though we conclude that the public interest considerations which we must consider include both the need determinations inherent in the Siting proceeding and the overall public interest ratemaking issues involved in the Duquesne/GPU Transaction, we are not persuaded that consolidation, or reopening of the Duquesne/GPU Transaction record as the COUP Petitioners request is necessary to preserve their ability to litigate the Siting proceeding ...

To the extent the COUP Petitioners are not retail customers of either of the Duquesne or GPU Companies involved

---

4. In addition to the instant petition, this opinion and order disposed of several pleadings filed by other parties not parties to this appeal. Of course, our review here is limited to the PUC's disposition of the instant petition.

in the Transaction, they would not have had occasion to receive actual notice of the [transaction proceeding]. However, we do not view this lack of actual notice as a violation of due process as it relates to the COUP Petitioners' ability to fully and fairly litigate their concerns in the Siting proceeding. Rather, a review of the notices in the Duquesne/GPU Transaction proceeding indicates that the parties did not ask the PUC to approve a specific location for the New Line at the time said notices were issued ...

Much has been made of the alleged piecemeal approach of Duquesne and the GPU Companies. In view of our intent to review all factors affecting the public interest ... we expressly hold that any decision in the Transaction proceedings will not limit the scope of the Siting proceeding.

On the basis of the foregoing, we shall deny the Remand Petition. The Siting proceeding provides the appropriate procedural vehicle for our earnest consideration of the issues attendant to the need for and location of the New Line. We further deny the request for intervention in the consolidated Transaction proceeding as untimely.

(Footnotes omitted.)

On April 2, 1992, the PUC entered an opinion and order adopting, in general, the administrative law judge's recommended decision in the transaction proceeding.

On appeal to this court from the PUC's March 16, 1992 order,[5] the fundamental issue presented is whether the PUC erred in splitting the utilities' overall proposal into two proceedings.[6]

5. Our scope of review of an order of the PUC is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. *Valley Rural Electric Cooperative, Inc. v. Pennsylvania Public Utility Commission*, 143 Pa.Commonwealth Ct. 131, 598 A.2d 627 (1991).

6. In his brief, Barensfeld raises other issues involving due process, eminent domain, and collateral estoppel. However, these issues are contingent upon the fundamental issue because they presuppose that the PUC erred in holding two proceedings.

In essence, Barensfeld argues that the PUC's decision in the transaction proceeding makes its decision in the siting proceeding a foregone conclusion; as such, the two proceedings must be consolidated. We disagree. Initially, we note that the utilities, the administrative law judge, and the PUC have gone to great lengths (as demonstrated, respectively, by the filing, the recommended decision, and the opinion and order quoted above) to assure participants in the siting proceeding that the decision there is not precluded by the decision in the transaction proceeding.

Despite an apparent lack of case law dealing with this issue, there are statutory and regulatory grounds for holding two proceedings. For instance, the transaction agreements were filed under Section 2102 of the Public Utility Code, 66 Pa.C.S. § 2102, which states, in pertinent part:

(a) [n]o contract or arrangement providing for the furnishing of management, supervisory, construction, engineering, accounting, legal, financial, or similar services, and no contract or arrangement for the purchase, sale, lease, or exchange of any property, right, or thing or for the furnishing of any service, property, right or thing ... between a public utility and any affiliated interest *shall be valid or effective unless and until such contract or arrangement has received the written approval of the commission* ...

(b) It shall be the duty of every public utility to file with the commission a verified copy of any such contract or arrangement ... *The commission shall approve such contract or arrangement ... only if it shall clearly appear and be established upon investigation that it is reasonable and consistent with the public interest* ...

(c) If the commission shall determine that the amounts paid or payable under a contract or arrangement filed in accordance with this section are in excess of the reasonable price for furnishing the services provided for in the contract, or that such services are not reasonably necessary and proper, *it shall disallow such amounts, insofar as found excessive, in any proceeding involving the rates or practices of the public utility. In any proceeding involving such amounts,*

*the burden of proof to show that such amounts are not in excess of the reasonable price for furnishing such services, and that such services are reasonable and proper, shall be on the public utility.*

(Emphasis added.)

In comparison, the siting regulations found at 52 Pa.Code §§ 57.71–57.77, set forth a comprehensive application, hearing, and determination procedure for locating and constructing high voltage transmission lines. Specifically, Section 57.76(a) provides:

[t]he Commission will issue its order, with its opinion, if any, either granting or denying the application, in whole or in part, as filed or upon the terms, conditions or modifications, of the location, construction, operation, or maintenance of the line as the Commission may deem appropriate. *The Commission will not grant the application, either as proposed or as modified, unless it finds and determines as to the proposed HV line:*

*(1) That there is a need for it.*

*(2) That it will not create an unreasonable risk of danger to the health and safety of the public.*

*(3) That it is in compliance with applicable statutes and regulations providing for the protection of the natural resources of this Commonwealth.*

*(4) That it will have minimum adverse environmental impact, considering the electric power needs of the public, the state of available technology and the available alternatives.*

(Emphasis added.)

Barensfeld has not cited, and we have not found, any authority for the proposition that these disparate proceedings, which involve separate and distinct issues, must be consolidated.

Moreover, the PUC appears to have legitimate reasons for holding two proceedings. As the PUC stated in its March 16, 1992 opinion and order, "[t]he scope of the Siting proceeding is such as to tax the administrative resources of this agency. At present, there are over 9,000 protests comprising 74 File

Folders lodged against the application for a certificate of public convenience pertaining to the New Line." Since the internal operating procedures of the PUC are better left to the discretion of that agency than to this court, we cannot say that the PUC erred in holding separate proceedings. *See Equitable Gas Company v. Pennsylvania Public Utility Commission*, 106 Pa.Commonwealth Ct. 240, 254, 526 A.2d 823, 829, *petition for allowance of appeal denied*, 516 Pa. 644, 533 A.2d 714 (1987) ("we must [defer] to the PUC's administrative expertise and to the interpretations by that body of its governing statute and regulatory pronouncements.").

As such, we conclude that the PUC properly denied Barensfeld's "petition to intervene and for remand". *See West Penn Power Company v. Pennsylvania Public Utility Commission*, 147 Pa.Commonwealth Ct. 6, 14, 607 A.2d 1132, 1136 (1992) ("[w]e will not substitute our discretion for the discretion properly exercised by the PUC.").

Accordingly, we affirm the order of the PUC.

## ORDER

AND NOW, April 23, 1993 the order of the Pennsylvania Public Utility Commission denying the "petition to intervene and for remand" in the above-captioned matter is affirmed.