641 A.2d 1249

## SOMERSET RURAL ELECTRIC COOPERATIVE, INC., Petitioner,

v.

## PENNSYLVANIA PUBLIC UTILITY COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 13, 1993.

Decided April 20, 1994.

Reargument Denied June 29, 1994.

500

Patrick Armstrong, for petitioner.

Donna Stanek Zehner, Asst. Counsel, for respondent.

Alan Michael Seltzer, for intervenor, Pennsylvania Elec. Co.

Before McGINLEY and FRIEDMAN, JJ., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Somerset Rural Electric, Inc. (Somerset) appeals an order of the Pennsylvania Public Utility Commission (PUC) which granted summary judgment in favor of the Pennsylvania Electric Company (Penelec), dismissed Somerset's exceptions from the initial decision of an administrative law judge (ALJ) and ordered that Somerset be prohibited from providing electric service in the Borough of Jennerstown (Jennerstown), Somerset County.

On May 9, 1991, Penelec filed a petition for declaratory order (petition) with the PUC seeking an order declaring its exclusive right to furnish retail electrical service in Jennerstown and directing that Penelec be exclusively authorized to furnish electric service to the Jennerstown Speedway (Speedway).

In its petition, Penelec made the following averments of fact. Pursuant to a certificate of public convenience dated September 8, 1930 and an ordinance enacted by Jennerstown on June 13, 1930, Penelec has furnished retail electric service to various customers in Jennerstown. It has furnished retail electrical service to Speedway since May of 1968. On June 19, 1990, Speedway requested additional retail electrical service from Penelec to its facility. On July 12, 1990, Penelec gave Speedway a cost estimate of approximately $12,000 to $14,000 for the additional service.

Penelec averred that Somerset, a "rural electric cooperative corporation," which furnishes retail electric service to its members in portions of Somerset County, began providing retail electrical service for the first time in Jennerstown to Speedway in 1990.[1] Penelec averred that Somerset's service in Jennerstown to Speedway was "unlawful and inconsistent with the fundamental purpose of rural electric cooperatives...." (R.R. 8a). Specifically, Penelec argued that Somerset, being an electrical cooperative governed by the Pennsylvania Electric Cooperative Law (Cooperative Law), 15 Pa.C.S. §§ 7301–7359, could only provide electrical service to its members and that membership was restricted to "[a]ll persons in rural areas ... who are not receiving central station services." 15 Pa.C.S. § 7324.[2] Penelec asserted that because all of

1. Subsequent to receiving Penelec's cost estimate for its expanded service, Speedway went to Somerset, which, in turn agreed to provide Speedway with electrical service.

2. There is no dispute over whether the Borough of Jennerstown is a "rural area" as defined in the Cooperative Law, 15 Pa.C.S. § 7303. A "rural area" is "[a]ny area, not included within the boundaries of any incorporated or unincorporated city, town, village or borough, having a population in excess of 2,500 inhabitants, including both the farm and

Jennerstown, including the Speedway, had been receiving "central station service" from it, neither were eligible for membership in Somerset and that therefore, Somerset could not lawfully serve Speedway.

On June 3, 1991, Somerset filed a motion to dismiss Penelec's petition arguing that the PUC lacked jurisdiction over it. The PUC denied Somerset's motion to dismiss on August 29, 1991, and ordered that Penelec's petition be assigned to an ALJ.

Thereafter, Penelec filed a motion for summary judgment with the ALJ again asserting the arguments made in its petition and asserting that, as a matter of law, it was entitled to judgment. Somerset, in its answer to Penelec's summary judgment motion, again asserted the PUC's lack of jurisdiction over the matter.

On April 17, 1992, the ALJ issued its initial decision granting Penelec's motion for summary judgment.[3] The ALJ, in accepting Penelec's argument, concluded that because Somerset could only provide electrical service to its members pursuant to Section 7321(a)(1) of the Cooperative Law,[4] and that because neither Speedway, nor any other recipient of electrical service within Jennerstown, was eligible for membership in Somerset pursuant to Section 7324 of the Cooperative Law,[5]

nonfarm population thereof;" Jennerstown's population is less than 2,500.

3. Although the ALJ granted Penelec's motion for summary judgment and prohibited Somerset from providing service in Jennerstown, the ALJ declined to declare that Penelec had the exclusive right to provide service in Jennerstown as requested by Penelec. (ALJ's Initial Decision, R.R. 169a).

4. § 7321(a)(1) provides, in relevant part:
(a) General rule.—Each electric cooperative corporation shall have power:
(1) To generate, manufacture, purchase, acquire and accumulate electric energy and to transmit, distribute, sell, furnish and dispose of such electric energy to its members only....

5. § 7324 of the Cooperative Law, entitled "Qualifications of members, provides in part:
All persons in rural areas proposed to be served by an electric cooperative corporation, *who are not receiving central station service,* shall be eligible for membership in the corporation....

---

Somerset's attempt to provide service to Speedway was improper as a matter of law.[6] Somerset filed exceptions to the ALJ's decision with the PUC; on December 21, 1992, the PUC denied Somerset's exceptions and adopted the ALJ's initial decision granting summary judgment in favor of Penelec.

On appeal,[7] Somerset sets forth a number of allegations of error, all of which can be reduced to two essential claims. First, Somerset argues that the PUC had no jurisdiction over it and that therefore, its attempt to render a determination in this matter was in error. Second, Somerset asserts that if the PUC did validly exercise jurisdiction in this case, it erred in concluding that Somerset was prohibited from providing service within Jennerstown. We will address each of these issues separately.

As previously noted, Somerset, as an electric cooperative, is subject to the Cooperative Law. Somerset cites several provisions of the Cooperative Law as support for its assertion that the PUC lacks jurisdiction over it. Section 7334, 15 Pa.C.S. § 7334, provides:

Except as provided in Subchapter C (relating to unincorporated area certified territory), all electric cooperative corporations subject to this chapter shall be exempt in any and all respects from the jurisdiction and control of the Pennsylvania Public Utility Commission.

6. The ALJ made the following relevant conclusions of law:
   3. The term "central station service" in the Cooperative Law means "service from a central generation facility that serves numerous consumers."
   4. The inhabitants of the Borough of Jennerstown have been receiving "central station service" from Pennsylvania Electric Company since 1949.
   (R.R. 170a).

7. Our scope of review is limited to determining if a party's constitutional rights have been violated or if an error of law was committed and to ascertaining that all necessary findings of fact are supported by substantial evidence. *Valley Rural Cooperative, Inc. v. Pennsylvania Public Utility Commission,* 143 Pa.Commonwealth Ct. 131, 598 A.2d 627 (1991).

Subchapter C contains nine sections, 15 Pa.C.S. §§ 7351–7359, the first of which, § 7351, provides as follows:

> (a) General rule.—This subchapter shall apply only to the establishment of boundaries of certified territory between retail electric suppliers where one supplier is an electric cooperative corporation and the other supplier is subject to the jurisdiction of the Pennsylvania Public Utility Commission for rates, terms and conditions for electric service.

Somerset argues that the PUC only has jurisdiction over electrical cooperatives where Subchapter C applies. Somerset asserts that Subchapter C does not apply here because Subchapter C applies *only* to the PUC's drawing boundary lines within certified territories and Jennerstown is not within a certified territory.[8]

The PUC looked to Section 7358 of Subchapter C of the Cooperative Law as providing authority for its exercise of jurisdiction in this matter. Section 7358 provides as follows:

> Upon proceedings brought by an interested person or by action of the Pennsylvania Public Utility Commission, the commission shall have the jurisdiction to enforce compliance with this subchapter and shall have jurisdiction to prohibit the furnishing of retail electric service by any retail electric supplier[9] except in its certified territory or territories or where lawfully serving and, in connection with the enforcement and prohibition, to exercise all powers granted by this subchapter or otherwise to the commission.

Specifically, the PUC relied upon Section 7358 granting it, in addition to jurisdiction to enforce Subchapter C, "*jurisdiction*

---

**8.** There is no dispute here that Jennerstown is not within a certified territory.

**9.** The term "retail electric supplier" is defined in Subchapter C, Section 7352, as follows:

> Any person, exclusive of a municipal corporation, engaged in the furnishing of retail electric service. The term shall apply only to a retail electric supplier which is an electric cooperative corporation and to a retail electric supplier which is subject to the jurisdiction of the commission for rates, terms and conditions for electric service and has a mutual boundary in an unincorporated area with an electric cooperative corporation.

*to prohibit the furnishing of retail electric service by any retail electric supplier* [here Somerset] *except* in its certified territory or territories or *where lawfully serving.*" (Emphasis added).[10] Here, the issue before the PUC was whether Somerset was properly or "lawfully" serving Speedway. The PUC, through the exercise of its jurisdiction, *prohibited* Somerset from furnishing retail electric service in Jennerstown because it concluded that Somerset could not "lawfully" do so. If this determination was proper, then the PUC's exercise of jurisdiction, as set forth in 7358, was proper. We therefore turn to the issue of whether the PUC's determination that Somerset's service to Speedway was not lawful was in error.

As noted, the PUC's determination was based upon its conclusion that neither Speedway, nor any other entity within Jennerstown was eligible for membership in Somerset and that because Somerset, as an electrical cooperative, could only provide service to its members that its service to Speedway was improper.

Section 7321(a)(1) of the Cooperative Law clearly provides that "[e]ach electric cooperative corporation shall have power ... to furnish ... electric energy to its *members only....*" (Emphasis added). Section 7324 of the Cooperative Law, entitled, "Qualifications of members" provides:

> All persons in rural areas proposed to be served by an electric cooperative corporation, *who are not receiving central station service,* shall be eligible for membership in the corporation....

Here, the ALJ specifically found, as accepted by the PUC, that Speedway was receiving "central station service" from Penelec. Although the term, "central station service," is not defined in the Cooperative Law, the ALJ concluded, based upon review of federal cases interpreting the same phrase used in the federally enacted Rural Electrification Act, 7 U.S.C. § 904, that the term means "service from a central generation facility that serves numerous consumers." The

**10.** As noted hereinabove, we are not dealing with the whether Somerset is attempting to provide service within a "certified territory" as it is undisputed that Jennerstown is not within such a territory.

ALJ cited the following passage from the case of *Greensboro Lumber Company v. Georgia Power Company*, 643 F.Supp. 1345, 1359 n. 9 (N.D.Ga.1986), for support:

> The term "central station service" is used in the REA Act, *see e.g.* 7 U.S.C. § 902, to describe electric service from a central generation facility that serves numerous consumers. This is distinguished from, for example, electricity available only from small-scale, single-farm generators.

*See* ALJ's Initial Decision at R.R. 160a. Based upon said review, the ALJ thus concluded, as noted herein above, that Penelec's service within Jennerstown was "central station service" as set forth in the Cooperative Law and that pursuant to Section 7324, Somerset could not lawfully serve within Jennerstown.

Our review of the entire record in this matter, in accordance with our scope of review, reveals that the PUC's did not violate constitutional rights, err as a matter of law or issue findings that were not supported by substantial evidence.

Because we conclude that the PUC's determination that Somerset was not lawfully providing service within Jennerstown was correct, we hold that its exercise of jurisdiction was proper as specified in Section 7358 of the Cooperative Law. Accordingly, we will affirm the PUC's order.

## ORDER

AND NOW, this 20th day of April, 1994, the order of the Pennsylvania Public Utility Commission dated December 21, 1992 is affirmed.

FRIEDMAN, Judge, dissenting.

I respectfully dissent. I am convinced that Somerset's argument that the PUC has no jurisdiction over it is correct and, therefore, I would reverse the PUC's order.

Because Somerset is a rural electrical cooperative, incorporated in 1939, and presently subject to the provisions of the Electric Cooperative Law of 1990 (the Co-op Law), 15 Pa.C.S.

§§ 7301–7359, resolution of the jurisdictional question requires us to consider several of the Co-op Law's provisions. First, section 7334 of the Co-op Law provides, "Except as provided in Subchapter C (relating to unincorporated area certified territory), all electric cooperative corporations subject to this chapter *shall be exempt in any and all respects* from the jurisdiction and control of the Pennsylvania Public Utility Commission." 15 Pa.C.S. § 7334 (emphasis added).[1] Subchapter C contains nine sections, 15 Pa.C.S. §§ 7351–7359, the first of which provides, "This subchapter *shall apply only to the establishment of boundaries of certified territory* between two retail electric suppliers where one is an electric cooperative corporation and the other supplier is subject to the jurisdiction of the Pennsylvania Public Utility Commission for rates, terms and conditions for electric service." 15 Pa.C.S. § 7351 (emphasis added). "Certified territory" is defined as "[a]n *unincorporated area* as certified pursuant to section 7354...." 15 Pa.C.S. § 7352 (emphasis added). An "unincorporated area" is defined as "[a] geographical area outside the corporate limits of cities and *boroughs.*" *Id.* The Legislature has stated that "[e]xcept as otherwise provided in this section, a retail electrical supplier shall not furnish retail electric service in the certified territory of another retail electric supplier." 15 Pa.C.S. § 7354(a). Finally, section 7358 of the Co-op Law, 15 Pa.C.S. § 7358, provides:

Upon proceedings brought by an interested person or by action of the Pennsylvania Public Utility Commission, the commission *shall have the jurisdiction to enforce compliance with this subchapter and shall have jurisdiction to prohibit the furnishing of retail electric service by any*

---

1. Additionally, 66 Pa.C.S. § 102, in providing a definition of "public utility", specifically states:

(2) The term 'public utility' does *not include:*

....

(ii) Any bona fide *cooperative association* which furnishes service only to its stockholders or members on a nonprofit basis.

The parties argue whether or not the Speedway can be a member of Somerset. That question, however, involves the merits and because I would resolve this case on the jurisdictional question, I would not reach the merits of this dispute.

*retail electrical supplier except in its certified territory or territories . . . .* (Emphasis added.)

Somerset's argument is simple and straightforward. The PUC lacks jurisdiction over electrical cooperative corporations unless Subchapter C applies; since Subchapter C is not applicable, Somerset is exempt from control of the PUC. Somerset reasons that Subchapter C applies *only to establishing boundaries of a certified territory* where one supplier is a electric cooperative corporation, such as itself, and the other is a regulated utility such as Penelec. In other words, the PUC's jurisdiction over electrical cooperative corporations is limited to drawing boundary lines *within* certified territories. Certified territories can, by definition, encompass *only unincorporated areas* which, also by definition, *cannot be any area inside of the corporate limits of a borough,* such as the Borough of Jennerstown. Because the Borough of Jennerstown cannot be within a certified territory, the provisions of Subchapter C are not applicable, and the PUC does not have jurisdiction over Somerset. 15 Pa.C.S. § 7334. I can find no flaw in Somerset's logic and conclude that the argument is correct.

The majority finds authority for the PUC's exercise of jurisdiction in Section 7358 of the Co–Op Law. I disagree. Section 7358 states that the PUC "shall have jurisdiction to prohibit the furnishing of electric service by any retail electrical supplier except in its certified territory . . . ." 15 Pa.C.S. § 7358. A broad reading of that language could permit the PUC to prohibit an electrical cooperative corporation such as Somerset from providing service within the Borough. Such a broad reading, however, would be inconsistent with the limiting language of 15 Pa.C.S. § 7351 which states that "[t]his subchapter shall apply only to the establishment of boundaries of certified territory . . . ." Because we are compelled to construe legislation in a manner that gives effect to all provisions, 1 Pa.C.S. § 1922(2), I would construe the express limitation contained in section 7351 to prevent section 7358 from conferring jurisdiction over Somerset to the PUC in this case.

The PUC has only the powers conferred upon it by statute. *Delaware River Port Authority v. Pennsylvania Public Utility Commission*, 393 Pa. 639, 145 A.2d 172 (1958). "[T]he legislative grant of power to act in any particular case must be clear. . . ." *Swarthmore Borough v. Public Service Commission*, 277 Pa. 472, 479, 121 A. 488, 490 (1923) (citation omitted). If the legislature had intended the PUC to have jurisdiction over this type of dispute, it could have so provided; it did not. To the contrary, the Co-op Law specifically exempts electrical cooperative corporations, such as Somerset, from the PUC's jurisdiction except for *boundary disputes within unincorporated areas*.

In affirming the PUC, the majority puts the cart before the horse and decides the merits prior to determining whether the PUC had jurisdiction. Because I believe that section 7358 is the controlling section to determine jurisdiction and do not believe that the PUC had jurisdiction over Somerset on this dispute, I would conclude that the PUC improperly entertained the controversy.

Finally, this dispute involves interpretation of the Co-op Law of 1990, a matter well within the capacity of the individual courts of common pleas and subject to the review of this court.

Accordingly, I would reverse the PUC's order.